80 A.3d 1180

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**A.R., Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 15, 2012.

Decided Oct. 30, 2013.

Vincent P. DiFabio, Esq., Platt, DiGiorgio & DiFabio, Paoli, for A.R.

Nicholas J. Casenta Jr., Esq., Thomas P. Hogan Jr., Esq., West Chester, for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice EAKIN.

Appellant was found guilty of sexual abuse of children,[1]

---

1. 18 Pa.C.S. § 6312(b).

invasion of privacy,[2] and criminal use of a communications facility[3] for videotaping his 13–year–old step-daughter undressing in the bathroom. Although appellant admitted to the videotaping, he contended his motivation was to embarrass her and correct her behavior for having twice entered his bedroom while he was naked. The trial court did not credit appellant's testimony concerning his motivation and found him guilty on all counts. He was sentenced to a probationary term of three and one-half years and ordered to undergo a sex offender evaluation and follow all treatment recommendations as a specific condition of his probation. Appellant did not appeal.

Appellant's sex offender evaluator, Dr. Barry Zakireh, recommended appellant participate in mandated sex offender treatment with an emphasis on treatment of his denial and justification behavior, which included the use of therapeutic polygraph examinations when necessary. Dr. Zakireh reasoned appellant portrayed characteristics receptive to treatment, but minimized his actions and underreported his level of sexual attraction to the victim in planning his behavior. During his initial 12–week orientation period in the program, appellant continued to deny sexual motivation for his conduct, which prevented him from successfully advancing in his treatment. Therefore, a therapeutic polygraph was administered to confront appellant with his disingenuous behavior and attempt to steer him back to proper treatment, which required he admit the sexual nature of his actions as established by the trial court's conclusions of fact, reflected in his conviction. During a one and one-half-hour examination, appellant was asked ten questions, three of which were "relevant questions" designed to probe his sexual motivation for his offense.[4] Each of the questions was reviewed word-for-word with appellant before the polygraph was administered, and each was asked in

2. *Id.,* § 7507.1(a)(1)–(2).

3. *Id.,* § 7512(a).

4. (1) "Did you lie about your intentions for making those videos?"; (2) "Regarding those videos, did you lie to me about your intent?"; (3) "Did you make that video for a sexual reason?" Polygraph Examination Report, 10/16/07, at 5–6.

different ways three times to assure accuracy. For each of the three "relevant questions," the test evaluator concluded appellant provided deceitful answers.

After the polygraph examination, a program mental health professional continued to question appellant regarding his motivation for making the videos, and appellant continued his pattern of justifying his behavior and denying any underlying sexual motivation. It was determined appellant was engaged in cognitive distortions for the purpose of reasoning away his behavior and, thus, not making progress in his treatment. As a result, appellant was discharged from the program. Concluding appellant's discharge from the program was a violation of his probation conditions, appellant's probation officer filed a petition with the trial court. The trial court conducted a violation of probation (VOP) hearing, where it received the evidence outlined above, including the results of the therapeutic polygraph examination. Based on this evidence, the trial court found appellant violated his probation requirements, and it revoked his probation. Appellant was sentenced to another probationary term of three years and ordered to complete the sex offender program, including polygraph examinations administered to monitor his compliance.

Appellant appealed to the Superior Court, claiming there was insufficient evidence to support the trial court's conclusion he violated his probation, and the trial court erred in admitting the results of his therapeutic polygraph examination into evidence at his VOP hearing. *Commonwealth v. A.R.*, 990 A.2d 1, 2 (Pa.Super.2010). In a published opinion, the Superior Court affirmed and further expounded conditions on the admissibility of therapeutic polygraph examination results at VOP hearings. *Id.*, at 2, 6–7. The court concluded a reasonable reading of its "precedent regarding probation revocation proceedings indicates that, with certain caveats, therapeutic polygraph evidence may be admitted as supportive proof of a violation of a condition of a sexual offender's therapy-related probation requirements." *Id.*, at 6 (citing *Commonwealth v. Shrawder*, 940 A.2d 436, 443 (Pa.Super.2007); *Commonwealth*

*v. Castro,* 856 A.2d 178, 181 (Pa.Super.2004)). Thus, the court held:

> [T]he results obtained from the administration of a therapeutic polygraph examination in a sexual offenders' treatment program are admissible at a probation revocation hearing as evidence to support the *underlying* violation, *i.e.,* a sexual offender's lack of amenability to treatment, so long as [1) ] the results of that examination are not the sole basis for the revocation petition; [2) ] they do not reveal uncharged criminal conduct on the part of the defendant; and [3) ] they are not used for purposes of the investigation of criminal conduct.

*Id.,* at 7 (emphasis in original) (citations omitted).

The Superior Court concluded "the administration of the therapeutic polygraph examination was a 'last ditch' attempt to keep [a]ppellant in treatment, rather than having been the reason for his ultimate discharge." *Id.* (emphasis in original). The court further noted concerns regarding potential violations of appellant's Fifth Amendment privilege against self-incrimination were not present because the polygraph was used to underscore the fact appellant was not yet fully amenable to treatment—a requirement of his probationary sentence—due to his persistent denials of the sexual gratification component of his criminal activity. *Id.; cf. Shrawder,* at 442–43 (citations omitted) (Fifth Amendment issues arise where therapeutic polygraph examination evidence used to establish defendant's commission of offense or used as investigative tool to ferret out defendant's uncharged criminal conduct). Accordingly, the Superior Court concluded the trial court did not err in admitting into evidence the results of appellant's therapeutic polygraph examination. Judge Colville dissented, finding *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976) (plurality), *overruled on other grounds by Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986), precludes admission of polygraph results in all circumstances. *A.R.,* at 8 (Colville, J., dissenting). We granted review of the following issue:

> Did the Superior Court err in affirming the admission of the results of the therapeutic polygraph at the violation of

probation hearing? Were the enumerated conditions of admissibility appropriate?

*Commonwealth v. A.R.*, 616 Pa. 469, 50 A.3d 122 (2012) (*per curiam*).

Citing *Gee*, appellant contends polygraph examination results are unreliable and inadmissible for any purpose in Pennsylvania. While appellant recognizes his obligation to take the therapeutic polygraph, he asserts the results should only be used as part of therapy and treatment. Thus, he argues the trial court erred by admitting the polygraph results into evidence and basing its determination he violated his probation on the same. The Commonwealth responds appellant's therapeutic polygraph results were not accorded weight for any improper purpose as the results "were not . . . offered for their accuracy or as substantive evidence of disputed facts, but to help explain the actions of the parties, and the treatment procedures." Appellee's Brief, at 39. Moreover, the Commonwealth argues, "excluding any reference to the therapeutic polygraph, there was more than sufficient evidence in the record to support [the court's] finding that [appellant] was in violation of probation." *Id.* Concerning the Superior Court's enumerated conditions of admissibility, the Commonwealth argues the second and third conditions are irrelevant given that appellant has not alleged a Fifth Amendment violation, and constitute an incorrect statement of law. As for the first condition, the Commonwealth suggests therapeutic polygraph examination results should be offered only to help explain "the actions of the parties, the treatment procedures that are conditions of the defendant's parole or probation, and the recommendations of the treating and supervising professionals[,]" not "as an independent basis for finding or not finding a violation of parole or probation." *Id.*, at 46.

While appellant and the dissent below rely on *Gee* for the proposition that polygraph results are inadmissible in all circumstances, we note *Gee* was a plurality opinion of this Court, and thus, is not binding precedent. *See Commonwealth v. Brown*, 582 Pa. 461, 872 A.2d 1139, 1165 (2005) (Castille, J., concurring) (citations omitted) ("Plurality opin-

ions, by definition, establish no binding precedent for future cases."). Moreover, in *Gee,* this Court considered whether the trial court erred in excluding the defendant's polygraph results from evidence *at trial* and concluded the case was not an appropriate vehicle to reconsider our established precedent regarding the insufficient reliability of polygraph examination results as evidence in criminal cases. *Gee,* at 883–84. Thus, the language cited by the dissent and appellant is limited by *Gee*'s facts to the admissibility of polygraphs at trial and is not controlling precedent for this case. While the general rule has been polygraph results are inadmissible, the cases from which this general rule stems are factually distinguishable, and this Court has never decided the issue at hand—*i.e.,* whether the results of polygraph tests may be introduced at VOP hearings. *See Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367, 1376 (1991) (holding co-defendant's refusal to answer polygraph examination question whether he killed victim inadmissible at trial); *Office of Disciplinary Counsel v. Wittmaack,* 513 Pa. 609, 522 A.2d 522, 530 (1987) (holding polygraph examination results inadmissible at attorney disciplinary hearing); *Commonwealth v. Brooks,* 454 Pa. 75, 309 A.2d 732, 733 (1973) (holding exclusion of defendant's polygraph examination results from evidence at murder trial not erroneous).

 Despite prior case law excluding polygraph results from evidence, the admission here was not improper because the results were offered not as evidence of appellant's probation violation, but as background evidence to explain the actions taken by program staff. The record supports the Commonwealth's contention that appellant's polygraph results were offered, not for the truth of whether appellant received sexual gratification from his act, but to help explain the program's actions and treatment procedures. That appellant's refusal to admit his sexual motivation for making the videotapes reflected a lack of candor was established at trial when the court discredited appellant's testimony and found him guilty of the offense charged. The polygraph evidence was simply offered by the Commonwealth to assist the court in

attaining a full picture of why appellant was dismissed from treatment. *See* N.T. Violation of Probation Hearing, 1/5/09, at 4–5 (reflecting counsel's statement appellant did not violate probation based on failed polygraph but "because he refused to admit that the acts here were done for sexual gratification[,]" followed by court's response, "Exactly"). This information helped establish the somewhat collateral point that those administering the program had tried, albeit unsuccessfully, to keep appellant in the rehabilitative regime. Thus, this case does not implicate the general reservations and concerns expressed concerning the admissibility of polygraph evidence into evidence, as appellant's results were proffered not for their accuracy, but to help explain the actions of others involved.[5]

Accordingly, we affirm the Superior Court's holding that appellant's therapeutic polygraph examination results were admissible at his VOP hearing for purposes of helping explain the program's actions and the treatment procedures.[6]

Judgment of sentence affirmed. Jurisdiction relinquished.

Justice STEVENS did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR and BAER join the opinion.

Justice SAYLOR files a concurring opinion in which Justice TODD and Justice McCAFFERY join.

5. A common pleas judge is assumed to be capable of considering evidence for an appropriate, limited purpose, while refraining from any inappropriate use of the evidence. *See Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179, 183 n. 6 (1980) (collecting cases).

6. We do not reach the Superior Court's conclusion that therapeutic polygraph examination results cannot serve as the sole basis for probation revocation. The value to be accorded to evidence is a matter for the fact-finder with a well-settled appellate standard of review. Appellant's probation violation was supported by testimony from several treatment specialists involved in his therapy in addition to the results of his therapeutic polygraph, and we decline to require specific types of evidence in every case. In addition, we state no opinion regarding the Superior Court's Fifth Amendment analysis, *see A.R.*, at 7 (citations omitted); such is unnecessary as appellant has not alleged a Fifth Amendment violation.

Justice SAYLOR, concurring.

I join the majority opinion, except for footnote 6.

As recognized by the majority, polygraph results are generally inadmissible in Pennsylvania courts. *See* Majority Opinion at 361, 80 A.3d at 1183. The reason is straightforward: such "evidence" is considered unreliable.[1] Nevertheless, I agree that this type of information may be admissible at a violation-of-probation hearing for a relevant, ancillary objective, provided that, in context, it is clear that it is not being offered for its truth. In this regard, I would take the opportunity to comment on the rule as developed by the Superior Court, which is a principal reason we allowed appeal. *See Commonwealth v. A.R.*, 616 Pa. 469, 50 A.3d 122 (2012) (per curiam) (granting allocatur to address, *inter alia*, whether the Superior Court's "enumerated conditions of admissibility [were] appropriate"), *quoted in* Majority Opinion at 361, 80 A.3d at 1182.

A review of the intermediate court's opinion reflects that it makes two essential legal points: (1) because the "degree of proof necessary to achieve revocation of an offender's probation is far less than that required to sustain a criminal conviction," polygraph evidence may be admitted as "support-

1. *See United States v. Scheffer*, 523 U.S. 303, 309, 118 S.Ct. 1261, 1265, 140 L.Ed.2d 413 (1998) (referencing learned treatises and concluding that "there is simply no consensus that polygraph evidence is reliable. To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques."); *see also id.* at 312, 118 S.Ct. at 1266 ("[T]here is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because certain doubts and uncertainties plague even the best polygraph exams.").

Perhaps the technology has improved in recent years, but it is impossible for this Court to discern the existence of any such developments on the record before us. More generally, to the extent a proponent of polygraph evidence might seek its admission by claiming that newer technology is more trustworthy, such a claim would be subject to vetting according to recognized standards pertaining to novel scientific evidence, most notably, the standard articulated in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), which held that scientific evidence must gain the general acceptance of the relevant expert community to be admissible. *See Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 555, 839 A.2d 1038, 1043–44 (2003). *See generally Betz v. Pneumo Abex, LLC*, 615 Pa. 504, 44 A.3d 27, 53 (2012) (indicating that, for purposes of assessing whether a *Frye* hearing is warranted, a broad meaning should be given to the term "novel" as it describes the scientific evidence in question).

ive proof of a violation," *Commonwealth v. A.R.*, 990 A.2d 1, 6 (Pa.Super.2010); and (2) the results of a polygraph test may not comprise the sole basis for the revocation, or reveal uncharged criminal conduct, or be used to investigate separate crimes. *See id.* at 7.

I would expressly disapprove the first of these items. Unless and until polygraph evidence is judicially established to be reliable, it has no probative value regardless of the evidentiary burden involved. *See generally Turner v. Commonwealth*, 278 Va. 739, 685 S.E.2d 665, 667 (2009) ("Polygraph test results fall far short of the 'demonstrably reliable' hearsay evidence that may be admitted under [the] 'relaxed' standards [applicable to revocation-of-probation hearings]." (quoting *United States v. McCallum*, 677 F.2d 1024, 1026 (4th Cir. 1982))). It is worth noting in this respect that this Court has previously applied the prohibition within the civil context, where the same preponderance standard obtains as in the violation-of-probation setting. *See, e.g., DeVito v. Civil Svc. Comm'n of Phila.*, 404 Pa. 354, 360, 172 A.2d 161, 164 (1961).

On the other hand, I find at least a portion the second proposition articulated by the Superior Court to have salience for purposes of the present dispute. Specifically, I agree that polygraph test results may not comprise the sole basis for the revocation.[2] Because a reasonable apprehension of the underlying context is necessary to understand how the polygraph results fit into the overall proffer advanced by the Commonwealth in support of its request for revocation—and because an understanding of that context is necessary to conclude that the polygraph results are not being (inappropriately) offered for their truth—it logically follows that polygraph evidence cannot comprise the sole basis for revocation. That being the case, instead of deciding not to reach this issue, *see* Majority Opinion at 363 n.6, 80 A.3d at 1184 n.6, I would expressly approve this latter aspect of the Superior Court's opinion.

**2.** I express no opinion as to whether polygraph results may be introduced if they reveal uncharged criminal conduct, or are ultimately used to investigate separate crimes. These factors are not implicated by the events of this case.

Accordingly, and as noted, I disassociate myself from footnote 6 of the majority opinion.

Justices TODD and McCAFFERY join this concurring opinion.