J-S65016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM H. EVANS, JR. | |
| Appellant | No. 3235 EDA 2013 |

Appeal from the Judgment of Sentence October 22, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0000125-1987

BEFORE: PANELLA, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 26, 2015**

Appellant, William H. Evans, Jr., appeals from the judgment of sentence entered on October 22, 2013 in the Criminal Division of the Court of Common Pleas of Lehigh County, which followed the revocation court's determination that Appellant violated the terms of his probation. We affirm.

The trial court summarized the historical facts and procedural history in this case as follows:

> On May 11, 1994, [Appellant] entered a plea of *nolo contendere* to three counts of rape by forcible compulsion listed in Counts 1, 11 and 19 of the criminal information filed in this case. On June 20, 1994, the [trial court] sentenced [Appellant] on Count 1 to a term of confinement of not less than 10 years to not more than 20 years. On Count 11, the [court] sentenced [Appellant] to 20 years of probation to run consecutively to the sentence imposed on Count 1 and, on Count 19, [the court] sentenced [Appellant] to 20 years of probation to run consecutively to the sentence imposed on Count 11.

---

*Retired Senior Judge assigned to the Superior Court.

The charges stemmed from sexual abuse [Appellant] perpetrated on his three-year-old daughter, five-year-old son and eight-year-old stepdaughter between June of 1982 and August of 1983. During this period, [Appellant] repeatedly threatened, beat and raped the children while they lived at his residence. He often tied them to poles and gagged them as he violated them orally, anally and genitally. He used a gun and knife to threaten them. All three children suffered extreme psychological trauma as a result of what [Appellant] did to them.

[After serving his incarceration sentence on Count 1, Appellant was released in March 2013. At this time, Appellant commenced serving his probationary sentence for Count 11. On June 27, 2013, Appellant was taken into custody following a June 21st incident that occurred at the all-male boarding house at which he was residing. The June 21st incident began when the manager of the boarding house ordered Appellant to vacate the premises because he brought a woman into his room. Thereafter, Appellant threatened the boarding house manager with bodily injury and death. The revocation court convened a **Gagnon I**[1] hearing on September 24, 2013. At the conclusion of the hearing, the court found probable cause to believe that Appellant may have violated his probation by failing to notify his probation officer of his new residence after leaving the boarding house and by issuing threats to the manager of the boarding house.]

On October 15, 2013, [the revocation court] conducted a **Gagnon II** hearing. [At the close of that hearing, the court] found that [Appellant] violated the terms of [his] probation by failing to refrain from prohibited overt behavior in that he threatened [the boarding house manager.[2] Therefore, the court] revoked probation on Count 11 and resentenced [Appellant] to a state confinement of not less than four months to not more than 24 months, to be followed by 18 years of probation. [The court] also revoked probation on Count 19 and, after taking into account [Appellant's] months of probation already served, [] re-

_____

[1] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

[2] The court dismissed the violation in which the Commonwealth alleged that Appellant failed to report his new residence to his probation officer.

sentenced [Appellant] to 18 years of probation to run consecutively to the sentence imposed on Count 11. On November 1, 2013, [Appellant] filed a motion to modify his sentence which [the court] denied by order filed on November 6, 2013. [A timely notice of appeal followed on November 14, 2013.]

Trial Court Opinion, 2/28/14, at 1-2.[3]

Appellant's brief raises the following questions for our review:

Were [Appellant's] due process rights compromised by the delay from the date of his arrest until the occurrence of ***Gagnon II*** [h]earing which delay resulted in the unavailability of a witness for the defense for the violation hearing?

Was the evidence presented by the Commonwealth sufficient to prove by a preponderance of the evidence that [Appellant] violated the terms and conditions of his probation?

Did the [revocation] court err by imposing a disproportionate sentence based upon the nature of the violation and by failing to order a presentence investigation report or otherwise engage in a presentence inquiry to apprise itself of [Appellant's] circumstances of life and other significant factors relevant to the sentence?

Appellant's Brief at 9.

In his first claim, Appellant alleges that his due process rights were violated by an unnecessary delay between the date of his arrest (June 27, 2013) and his ***Gagnon II*** hearing (October 15, 2013). Appellant alleges "that this delay cost him the benefit of testimony from Nancy Hester[, who

_____

[3] Both Appellant and the revocation court have complied with the requirements set forth in Pa.R.A.P. 1925.

was called away at the end of July on a family matter.]" Appellant's Brief at 16. Although Appellant concedes that Ms. Hester was not present during his confrontation with the boarding house manager, Appellant claims that Ms. Hester had a previous encounter with the manager on June 21st during which the manager acted aggressively and inappropriately towards her. Appellant therefore claims that Ms. Hester "could have testified to the attitude shown by [the boarding house manager] towards her and [Appellant]," which would have bolstered Appellant's credibility and substantiated his contention that he did not violate his lease conditions by having a female present in his room. *Id.* This claim merits no relief.

In relevant part, Rule 708 of the Pennsylvania Rules of Criminal Procedure provides that a trial court may not revoke a probationary sentence "unless there has been a hearing held as speedily as possible at which the defendant is present and represented by counsel." Pa.R.Crim.P. 708(B)(1). "The requirement of a speedy revocation hearing means that the courts must act with reasonable promptness once officials are aware of [a probation] violation." *Commonwealth v. Pelzer*, 466 A.2d 159, 161 (Pa. Super. 1983). The rule requiring a speedy revocation hearing does not establish a presumptive period in which the Commonwealth must revoke probation; instead, the question is whether the delay was reasonable under the circumstances and whether the defendant was prejudiced by the delay. *Commonwealth v. Christmas*, 995 A.2d 1259, 1262-1263 (Pa. Super.

2010), *appeal denied*, 53 A.3d 756 (Pa. 2012). To determine whether there has been reasonable promptness for purposes of Rule 708(B)(1), a court considers three factors: the length of the delay, the reasons for the delay, and the prejudice to the defendant as a result of the delay. ***Christmas***, 995 A.2d at 1263. The primary purpose of a prompt revocation hearing is to prevent the loss of essential witnesses or documentary evidence, and to avoid the continuance of unnecessary incarceration or other limitations of the personal liberty of the accused. ***Pelzer***, 466 A.2d at 161.

An analysis of the circumstances surrounding this case leads us to conclude that Appellant received a reasonably prompt revocation hearing and that he was not prejudiced by any delay in the proceedings. A period of 110 days elapsed between Appellant's June 27, 2013 arrest and his October 15, 2013 ***Gagnon II*** hearing. As the revocation court noted, Appellant never explained what steps he took to secure Ms. Hester's appearance or what proof he had that she became unavailable at the end of July 2013. ***See*** Trial Court Opinion, 2/28/14, at 4. Moreover, Appellant made no showing at the ***Gagnon II*** hearing that he requested an expedited proceeding. ***Id.*** Finally, there can be no argument that Appellant's ***Gagnon II*** hearing took place after his probationary sentence expired. In view of these factors, we fail to see how a three and one-half month period constituted an extraordinary or unreasonable delay.

The Commonwealth has offered no explanation for the time that elapsed between Appellant's arrest and his *Gagnon II* hearing. Where the Commonwealth provides no explanation for the delay, the court should analyze whether the delay prejudiced the defendant. *Christmas*, 995 A.2d at 1263.

> Prejudice in this context has been interpreted as being something which would detract from the probative value and reliability of the facts considered, vitiating the reliability of the outcome itself. One specific purpose of our rule in requiring a prompt revocation hearing is to avoid such prejudice by preventing the loss of essential witnesses or evidence, the absence of which would contribute adversely to the determination. Another is to prevent unnecessary restraint of personal liberty.

*Id.*

Appellant claims that he was prejudiced by the loss of Ms. Hester's testimony. Appellant concedes, however, that while Ms. Hester had an angry confrontation with the boarding house manager, this encounter occurred four and one-half hours before Appellant confronted the manager. N.T., 10/15/13, at 7. Appellant did not witness the interaction between the manager and Ms. Hester and Ms. Hester was not present for Appellant's encounter with the manager. *Id.* at 5. Under these circumstances, we concur in the revocation court's conclusion that Ms. Hester's testimony had no bearing on whether Appellant threatened the boarding house manager. *See* Trial Court Opinion, 2/28/14, at 4. Since Ms. Hester had no relevant personal knowledge regarding the nature of the interaction between

Appellant and the boarding house manager, Appellant cannot show that any delay in his revocation hearing prejudiced his defense.

Appellant's second claim asserts that the evidence presented by the Commonwealth at the **Gagnon II** hearing was insufficient to support a finding that Appellant violated a condition of his probation that forbade him from engaging in overt behavior. Specifically, Appellant maintains that, while a heated exchange may have occurred, nothing on his part rose to the level of overt behavior worthy of a probation violation since nothing was "meant seriously" and the record is questionable as to whether Appellant's actions placed the boarding house manager in fear of harm. **See** Appellant's Brief at 19. This claim fails.

The following standard governs our review of Appellant's second claim:

> The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence,[4] that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective rehabilitation tool incapable of deterring [the] probationer from future antisocial conduct.

**Commonwealth v. A.R.**, 990 A.2d 1, 4 (Pa. Super. 2010) (footnote in original; internal citations omitted), *aff'd*, 80 A.3d 1180 (Pa. 2013).

---

[4] The "preponderance of the evidence" is the lowest burden of proof in the administration of justice, and it is defined as the "greater weight of the evidence, *i.e.*, to tip a scale slightly [in one's favor]." **Raker v. Raker**, 847 A.2d 720, 723 (Pa. Super. 2004).

The revocation court made the following findings in support of its conclusion that Appellant's probation should be revoked based upon his violation of the terms of his probation.

> [The boarding house manager] testified at the **Gagnon II** hearing. He explained that he evicted [Appellant] from the rooming house on June 21, 2013, after he discovered that [Appellant] violated rooming house policy by allowing a female guest, Nancy Hester, into his room.
>
> [The boarding house manager] said that [Appellant] was aware of the policy prohibiting female guests. Near midnight on June 21, [Appellant] got angry over the eviction and began screaming profanities at [the manager]. [Appellant] then threatened to kill [the manager]. He also told [the manager] that his friend Tom would "bust him up." This began in the occupied rooming house and continued outside the house. The commotion caused [another individual] to come to the scene of the shouting to see what was going on. [The manager] was alarmed by these threats. He went into his office, locked the door and called the police.
>
> Based on this evidence, [the revocation court] found that the Commonwealth [presented sufficient evidence to demonstrate that Appellant violated condition number nine of his probation by failing to refrain from overt behavior.] The evidence showed that [Appellant] threatened [the manager] with physical violence. [Appellant's] conduct fits the Crimes Code definition of terroristic threats in that he "communicate[d] . . . a threat to commit [a] crime of violence with intent to terrorize another. . ." 18 Pa.C.S.A. § 2706(a)(1). There was sufficient evidence to show evidence to show that [Appellant] violated this condition of probation.

Trial Court Opinion, 2/28/14, at 6-7.

Our review of the certified record confirms evidentiary support for the revocation court's findings. **See** N.T., 10/15/13, at 19-35 (testimony of

boarding house manager at revocation hearing). Hence, Appellant's sufficiency challenge merits no relief.

Appellant's third and final claim asserts that the revocation court abused its discretion by imposing a sentence that was disproportionate to the nature of Appellant's violation and unduly excessive. Such a claim presents a challenge to the discretionary aspects of a sentence. *Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010) (claim that sentence is excessive is a challenge to the discretionary aspects of a sentence).

We note that "sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Moreover, pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court has explained:

> To reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007); *Commonwealth v. Kalichak*, 943 A.2d 285, 289 (Pa. Super. 2008) ("when a court revokes probation and imposes a new sentence, a criminal defendant needs to preserve challenges to the discretionary aspects of that sentence either by objecting during the revocation sentencing or by filing a post-senten*ce* motion"); *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) ("issues challenging the discretionary aspects of a sentence [following the revocation of probation] must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings.  Absent such efforts, an objection to a discretionary aspect of a sentence is waived").

In this case, Appellant filed a timely notice of appeal and preserved his discretionary sentencing challenge by filing a motion to reconsider his sentence.  Within Appellant's Rule 2119(f) statement, Appellant claims that the revocation court "violated fundamental norms underlying the sentencing process when it imposed a sentence of total confinement for technical violations of probation and did so without ordering a presentence report or undertaking a meaningful presentence inquiry."  **See** Appellant's Brief at 13. Appellant, however, has only preserved the claims that the court imposed a sentence disproportionate to the alleged violation and did so without a meaningful presentence inquiry, as these were the only claims that were contained in Appellant's motion to reconsider and Rule 1925(b) statement.

Appellant has waived his claim predicated on the court's failure to order a presentence report. *Kalichak*, 943 A.2d at 289.

We must now determine whether Appellant's claims present a "substantial question that the sentence appealed from is not appropriate under the Sentencing Code." *Cook*, 941 A.2d at 11. Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McKiel*, 629 A.2d 1012, 1013 (Pa. Super. 1993); *Commonwealth v. Goggins*, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000).

As this Court has held, a claim that the sentencing court failed to consider the rehabilitative needs of a defendant does raise a substantial question under the Sentencing Code. *Dodge IV*, 77 A.3d at 1273 ("we find that Appellant's claim that the sentencing court disregarded rehabilitation and the nature and circumstances of the offense in handing down its [consecutive, standard range] sentence presents a substantial question for our review"); *see also Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2013) (a claim that the trial court "failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs" of the defendant, raised a

substantial question).  Therefore, we may reach the merits of Appellant's preserved claims.

We cannot agree with Appellant's contention that the court abused its discretion by imposing a disproportionate sentence without a meaningful presentence inquiry.  The thrust of Appellant's claim is that the revocation court focused exclusively upon the nature of Appellant's underlying convictions to the exclusion of any other relevant sentencing criteria.  The court's rationale and the certified record belie this assertion.  After reflecting upon the nature of Appellant's prior offenses, the court stated:

> Repeated threats, some with a gun and knife, were intrinsic to [Appellant's] rapes.  It was proven at the **Gagnon II** hearing that [Appellant] has once again threatened to kill, this time while in an obscenity-laced rage.  The commotion that he caused was considerable.  **This recent behavior demonstrates that [Appellant] remains likely to resort to threats and violence as he seeks what he wants.  Because there was a likelihood that [Appellant] would engage in future criminal activity, it was appropriate to revoke probation and impose confinement on Count 11.**  Furthermore, it was proper to impose a term of confinement of not more than four months to not more than 24 months.  This enables the state authorities to use their discretion and gauge when [Appellant] is appropriate for parole after a relatively short minimum sentence.

Trial Court Opinion, 2/28/14, at 8-9 (emphasis added).  Contrary to Appellant's contentions, the court did not look solely to past convictions.  It is evident that the court considered Appellant's prior offenses within the context of the present violation in order to gauge Appellant's amenability to, and progress toward, rehabilitation.  We agree with the revocation court

- 12 -

that, based upon Appellant's present conduct, his progress is lacking.  ***See***

***id.*** at 9 ("[Appellant] has demonstrated that he remains a danger and that

he has not been totally rehabilitated").   Given the risk posed to the

community stemming from Appellant's likelihood to re-offend, we concur in

the court's decision to recommit Appellant to a sentence of incarceration

followed by a lengthy probationary sentence.   For these reasons, we

conclude that Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2015