J-S60042-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : IN THE SUPERIOR COURT OF |
| | :     PENNSYLVANIA |
| Appellee | : |
| | : |
| v. | : |
| | : |
| STEVEN PAUL SCOTT, | : |
| | : |
| Appellant | : No. 618 MDA 2018 |

Appeal from the Judgment of Sentence March 14, 2018
in the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001063-2002

BEFORE:   SHOGAN, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 20, 2018**

Steven Paul Scott (Appellant) appeals from his March 14, 2018 judgment of sentence, which the trial court imposed after revoking Appellant's probation.  We affirm.

The trial court summarized the procedural history as follows.

> On January 16, 2003, [A]ppellant pled guilty to two counts of involuntary deviate sexual intercourse (IDSI), two counts of aggravated indecent assault, one count of indecent assault, one count of endangering the welfare of children, and one count of corruption of minors.  [Appellant] committed these crimes against a [ten-year-old] child.  On March 13, 2003, [A]ppellant was sentenced to an aggregate term of five to ten years' incarceration followed by seventeen years of special probation ….
> … [A]ppellant's supervision was subject to the conditions governing special probation and parole, the standard special conditions for sex offenders, and optional special conditions for sex offenders.

*Retired Senior Judge assigned to the Superior Court.

On December 28, 2017, [A]ppellant came before the [trial] court for a ***Gagnon I***[1] or preliminary probation violation hearing. … On March 14, 2018, [A]ppellant came before the [trial] court for a ***Gagnon II*** or a final probation violation [(VOP)] hearing. The [trial] court found that [A]ppellant violated the conditions of his supervision. The court revoked [A]ppellant's probationary sentences and resentenced him to an aggregate term of three to eight years' incarceration….

Trial Court Opinion, 7/6/2018, at 1-2 (citation omitted).

Appellant timely filed this appeal.[2]  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant's first issue challenges the sufficiency of the evidence produced by the Commonwealth at the probation revocation hearing, which presents a question of law subject to our plenary review. ***Commonwealth v. Colon***, 102 A.3d 1033, 1041 (Pa. Super. 2014).  In examining these issues, "[w]e must determine whether the evidence admitted at [the hearing] and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses."  ***Id.*** We may

_____

[1] ***Gagnon v. Scarpelli***, 411 U.S. 778 (1973).

[2] After the ***Gagnon II*** hearing, Appellant filed a motion for reconsideration. This filing did not toll the 30–day appeal period.  ***See*** Pa.R.Crim.P. 708(E). Because the trial court did not expressly grant reconsideration or vacate the sentence within 30 days, it was divested of jurisdiction to rule upon Appellant's motion.  ***See id.***, Comment; ***Commonwealth v. Swope,*** 123 A.3d 333, 337 (Pa. Super. 2015). However, Appellant filed the notice of appeal within 30 days of his judgment of sentence, rendering his appeal timely filed.

not weigh the evidence or substitute our judgment for that of the trial court. *Id.* Further, we bear in mind that a hearing regarding a probation violation is different from a criminal trial. "The reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct." *Commonwealth v. Ortega*, 995 A.2d 879, 886 (Pa. Super. 2010). Rather, the Commonwealth establishes a probation violation by showing, by a preponderance of the evidence, "that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." *Id.*

Appellant admits that he was unsuccessfully discharged from sex offender treatment at Commonwealth Clinical Group, Inc. (CCG), but nevertheless argues that the evidence presented during his probation revocation hearing was insufficient to prove that probation has been ineffective in deterring future antisocial behavior and/or incapable of meeting his rehabilitative needs. Appellant's Brief at 14. Appellant argues that many of his behaviors ceased after a warning, demonstrating the effectiveness of probation. *Id.* at 13-26. Furthermore, he claims that the conduct relied upon by CCG to support his discharge from therapy and later by the Commonwealth to support the probation revocation was too remote in time or too minor to support a discharge from therapy and/or revocation of probation. *Id.*

Our review of the record reveals that at the VOP hearing, the Commonwealth introduced evidence demonstrating Appellant's long history of noncompliance with the terms and conditions of his probation, which culminated in the filing of a petition seeking revocation of Appellant's probation in December 2017.[3]

In March 2017, Appellant's probation officer, Agent Michael Daub, discovered that Appellant had searched for pornographic videos and the websites Backpage and Craigslist for casual sexual encounters. N.T., 3/14/2018, at 32-33. This conduct violated the terms and conditions of Appellant's probation. However, in lieu of sanctions, Agent Daub chose to give Appellant a warning at that time. *Id.* at 39-40.

Appellant was required to attend weekly group therapy, but he failed to attend consistently in 2017. He had fourteen unexcused absences in 2017, including one in November 2017. *Id.* at 3-4. Although he made up ten sessions, many of his makeup sessions were prompted by his probation officer's continual reminders. *Id.* at 33-34. Appellant also missed three scheduled psychiatric evaluations in August and September 2017 before he finally attended. Appellant also did not take his medications as prescribed.

---

[3] This petition does not appear in the certified record.

In December 2017, as part of his treatment, Appellant took a polygraph test and was deemed as having failed.[4] Appellant then completed a written assignment as part of his group therapy, wherein he described his assessment of why he may have failed the test. *Id.* at 28. Appellant's written assignment was read into the record at the VOP hearing. *Id.* at 14-15. In the written assignment, Appellant revealed that he had engaged in a sexual encounter with a woman he had met through Craiglist.[5] *Id.* Appellant admitted that she had told him to stop, but he persisted with his advances, and ultimately coerced her into having sexual intercourse. *Id.*

Around this same time, Appellant revealed[6] that his wife was engaging in prostitution, and despite his alleged opposition to her behavior, he accepted cigarettes purchased with her illegal proceeds. *Id.* at 16. Finally, Appellant admitted that he and his wife had driven a seventeen-year-old co-worker home from work, despite such contact violating his prohibition against contact with minors. *Id.* at 17-18.

---

[4] Neither the specific questions asked nor the results of the test were admitted into evidence.

[5] Appellant later told his probation officer that this incident had occurred in early 2016.

[6] Appellant referenced some of these incidents in his written statement without detail. It appears that Appellant may have disclosed these other incidents in therapy, but the record is not clear exactly how and when the program learned about these other incidents.

On December 21, 2017, CCG discharged Appellant from the sex offender treatment program. During the VOP hearing, CCG's assistant director testified that the discharge was based upon numerous ongoing concerns of CCG, which included the concerns referenced *supra*. *Id.* at 10. Furthermore, based upon Appellant's disclosures after the polygraph examination, CCG believed Appellant was not being open and honest in therapy and was retroactively confessing to behaviors instead of proactively working out his issues in therapy. *Id.* at 16-17. This was particularly concerning because these types of retroactive disclosures were similar to the behavior that caused Appellant to be discharged from sex offender treatment in 2015.[7] Accordingly, the assistant director of CCG provided a clinical recommendation that Appellant receive treatment in a secure setting instead of on an outpatient basis. *Id.* at 20.

From our review of the record, it is apparent that some of CCG's concerns were ongoing, and others only arose after Appellant failed the polygraph test and disclosed the Craigslist sexual encounter, his wife's prostitution, and his unsupervised contact with a minor. Similarly, Agent Daub testified that although Appellant had a long history of probation violations for which Agent Daub could have sought revocation, Agent Daub

---

[7] This discharge in 2015 resulted in the trial court finding's that Appellant violated the terms and conditions of his probation. At that time, the trial court declined to revoke Appellant's probation, but amended the conditions of supervision. Order, 10/20/2015, at 1.

decided to seek revocation for the most serious violation: Appellant's discharge from CCG. *Id.* at 47-48. Moreover, this was Appellant's second discharge from sex offender treatment.

As put by the trial court in its re-sentencing order, "the evidence was remarkably undisputed, and it would be narrow minded for the [c]ourt to consider the tip of the iceberg instead of the totality of the circumstances and [Appellant's] entire history of behaviors." Order, 3/20/2018, at 1. Looking at Appellant's conduct as a whole, we conclude that the trial court correctly determined that the Commonwealth proved by a preponderance of the evidence "that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." *Ortega*, 995 A.2d at 886. Thus, his first issue does not entitle him to relief.

In his second issue, Appellant contends that our Supreme Court has held that the results of a therapeutic polygraph examination may not be used as the sole basis of a revocation petition. Appellant's Brief at 27 (citing *Commonwealth v. A.R.*, 80 A.3d 1180 (Pa. 2013)). Appellant posits that despite the Commonwealth's claim that it sought revocation based upon his unsuccessful discharge from his sex offender treatment at CCG, the facts and circumstances demonstrate that the revocation was actually sought due to his failed polygraph. *Id.* In support, Appellant argues that because many of the underlying incidents relied upon by the Commonwealth occurred long

before the polygraph test, but the Commonwealth did not file a petition to revoke his probation until just five days after his failed polygraph test, the timing suggests that the Commonwealth's sole reason for seeking revocation of probation was his failed test. *Id.* at 28-29.

Appellant misstates our Supreme Court's holding in *A.R.* in a failed attempt to use the polygraph test as a shield. In that case, A.R. admitted to videotaping his 13-year-old step-daughter undressing. He claimed that he did so to embarrass and admonish her, but the trial court did not find this explanation to be credible and found him guilty of, *inter alia*, sexual abuse of children, which contains a *mens rea* element of sexual gratification. As part of Appellant's probation, he was ordered to undergo a sex offender evaluation and to follow all recommendations, which included participating in mandated sex offender treatment. *A.R.*, 80 A.3d at 1181-82.

After A.R. continued to deny his sexual motivation for his conduct, "a therapeutic polygraph was administered to confront [A.R.] with his disingenuous behavior and attempt to steer him back to proper treatment, which required he admit the sexual nature of his actions as established by the trial court's conclusions of fact, reflected in his conviction." *Id.* at 1182. The program concluded A.R. provided deceitful answers to the polygraph, which demonstrated that he continued to "engag[e] in cognitive distortions for the purpose of reasoning away his behavior" and was not making progress in treatment. *Id.* Accordingly, the program discharged him. The

trial court found such discharge to violate A.R.'s probation requirements and revoked his probation.

On appeal, A.R. claimed, *inter alia*, that the trial court erred in admitting the results of his therapeutic polygraph examination into evidence at his VOP hearing. This Court disagreed, holding that

> the results obtained from the administration of a therapeutic polygraph examination in a sexual offenders' treatment program are admissible at a probation revocation hearing as evidence to support the *underlying* violation, *i.e.*, a sexual offender's lack of amenability to treatment, so long as [(1)] the results of that examination are not the sole basis for the revocation petition; [(2)] they do not reveal uncharged criminal conduct on the part of the defendant; and [(3)] they are not used for purposes of the investigation of criminal conduct.

*Id.* at 1182 (citing **Commonwealth v. A.R.**, 990 A.2d 1, 7 (Pa. Super. 2010) (emphasis in original)). Thus, this Court affirmed the trial court, stating "the administration of the therapeutic polygraph examination was a 'last ditch' attempt to keep [A.R.] in treatment, rather than having been the reason for his ultimate discharge." *Id.* (citing **A.R.**, 990 A.2d at 7). Judge Colville dissented based upon **Commonwealth v. Gee**, 354 A.2d 875, 883 (Pa. 1976) (*plurality*), *overruled on other grounds by* **Commonwealth v. Brady**, 507 A.2d 66 (Pa. 1986), which held that the results of a polygraph examination are inadmissible for any purpose due to the scientific unreliability of such tests.

A.R. appealed to our Supreme Court. Noting that **Gee** was not binding precedent, our Supreme Court distinguished **Gee** on the basis that **Gee**'s

prohibition related to admission of a polygraph at trial, not a VOP hearing.

*Id.* at 1183.  Thus, the Court concluded that

> [d]espite prior case law excluding polygraph results from evidence, the admission here was not improper because the results were offered not as evidence of [A.R.'s] probation violation, but as background evidence to explain the actions taken by program staff. The record supports the Commonwealth's contention that [A.R.'s] polygraph results were offered, not for the truth of whether [A.R.] received sexual gratification from his act, but to help explain the program's actions and treatment procedures. That [A.R.'s] refusal to admit his sexual motivation for making the videotapes reflected a lack of candor was established at trial when the court discredited [A.R.'s] testimony and found him guilty of the offense charged. The polygraph evidence was simply offered by the Commonwealth to assist the court in attaining a full picture of why [A.R.] was dismissed from treatment. This information helped establish the somewhat collateral point that those administering the program had tried, albeit unsuccessfully, to keep [A.R.] in the rehabilitative regime. Thus, this case does not implicate the general reservations and concerns expressed concerning the admissibility of polygraph evidence into evidence, as [A.R.'s] results were proffered not for their accuracy, but to help explain the actions of others involved.
>
> Accordingly, we affirm the Superior Court's holding that [A.R.'s] therapeutic polygraph examination results were admissible at his VOP hearing for purposes of helping explain the program's actions and the treatment procedures.

*Id.* at 1183-84.  In arriving at this holding, our Supreme Court explicitly

declined to reach this Court's "conclusion that therapeutic polygraph

examination results cannot serve as the sole basis for probation revocation."

*Id.* at 1184 n.6.  Our Supreme Court reasoned that

> the value to be accorded to evidence is a matter for the fact-finder with a well-settled appellate standard of review.  [A.R.'s] probation violation was supported by testimony from several treatment specialists involved in his therapy in addition to the

results of his therapeutic polygraph, and we decline to require specific types of evidence in every case.[8]

*Id.*

Thus, contrary to Appellant's argument, our Supreme Court did not hold "that the results of a 'therapeutic' polygraph examination may be submitted as evidence *supporting* an underlying violation of probation requirements, *only* when the results … are not used as the sole basis of the revocation petition."    Appellant's Brief at 27 (emphasis in original). Moreover, we find Appellant's case to be indistinguishable from ***A.R.***   Like ***A.R.***, Appellant was required to participate in sex offender treatment, and as part of that treatment, he was required to undergo therapeutic polygraph examinations to test whether he was being active and honest in treatment. In both cases the polygraph examination led to a revelation of underlying concerns with the efficacy of and honest participation with treatment, which prompted discharge from treatment.   The polygraph examination was not the reason the Commonwealth sought revocation or why Appellant was found in violation of probation; instead, he was found in violation because he did not remain in sex offender treatment and did not benefit from CCG's

---

[8] The Court also declined to state an opinion regarding the Superior Court's Fifth Amendment analysis, *i.e.*, whether the polygraph examination evidence revealed a commission of an offense or was used as an investigative tool to ferret out any uncharged criminal conduct in violation of the Fifth Amendment, because A.R. did not allege a Fifth Amendment violation.   ***Id.*** (citing ***A.R.***, 990 A.2d at 7).   Likewise, Appellant does not raise a Fifth Amendment claim in the instant case.

attempts to rehabilitate him. Any testimony about the polygraph results "was simply offered by the Commonwealth to assist the court in attaining a full picture of why [Appellant] was dismissed from treatment." ***A.R.***, 80 A.3d at 1183-84. Thus, the trial court did not err in concluding that the Commonwealth established that Appellant violated the terms and conditions of his probation.

Appellant's final issue asks us to review whether the trial court abused its discretion when it imposed his sentences consecutively, resulting in three to eight years of incarceration. Appellant's Brief at 30. We review this issue mindful of the following. "An appellant wishing to appeal the discretionary aspects of a probation-revocation sentence has no absolute right to do so but, rather, must petition this Court for permission to do so." ***Commonwealth v. Kalichak***, 943 A.2d 285, 289 (Pa. Super. 2008). Before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by establishing that (1) the appeal was timely filed; (2) the challenge was properly preserved by objecting during the revocation sentencing or in a post-sentence motion; (3) his or her brief includes a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of the sentence pursuant to Pa.R.A.P. 2119(f); and (4) the concise statement raises a substantial question that the sentence is inappropriate under the Sentencing Code. ***Commonwealth v. Swope***, 123 A.3d 333, 338 (Pa. Super. 2015).

Instantly, Appellant has satisfied the first three requirements by timely filing a post-sentence motion challenging the excessiveness of his sentence, timely filing a notice of appeal, and including a Rule 2119(f) concise statement in his brief. Thus, we examine whether Appellant has presented a substantial question for our review.

Appellant asks this Court to review the discretionary aspects of his sentence based upon the trial court's imposition of a sentence that he argues is "manifestly excessive in relation to his criminal conduct, rehabilitative needs, behavior under supervision, and mental disabilities[,]" resulting in a sentence that is too severe. Appellant's Brief at 11. Appellant further argues that the trial court relied upon the ineffectiveness of probation as a tool for his rehabilitation, but such ineffectiveness is not supported by the record. *Id.*

A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010). However, this Court has held that a challenge to the excessiveness of consecutive sentences imposed following revocation of probation, together with a claim that a trial court failed to consider rehabilitative needs and mitigating factors upon fashioning the sentence, presents a substantial question. *Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015). Furthermore, "a claim that a particular probation revocation

sentence is excessive in light of its underlying technical violations can present a question that we should review." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1253 (Pa. Super. 2006); ***see also Commonwealth v. Crump***, 995 A.2d 1280, 1282 (Pa. Super. 2010) ("The imposition of a sentence of total confinement after the revocation of probation for a technical violation, and not a new criminal offense, implicates the 'fundamental norms which underlie the sentencing process.'"). Therefore, we conclude that Appellant presents a substantial question for our review.

As we have explained,

> [t]he imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Simmons***, 56 A.3d 1280, 1283–84 (Pa. Super. 2012).

Upon revoking probation, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S. § 9771(b). Thus, upon revoking probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence. ***Commonwealth v. Infante***, 63 A.3d 358, 365 (Pa. Super. 2013). However, once probation has been revoked,

- 14 -

the court shall not impose a sentence of total confinement unless it finds that

> (1) the defendant has been convicted of another crime; or
>
> (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
>
> (3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c). In all cases where the trial court resentences an offender following revocation of probation, the trial court must place its reasons for the sentence on the record. 42 Pa.C.S. § 9721(b); *Commonwealth v. Cartrette*, 83 A.3d 1030, 1040–1041 (Pa. Super. 2013). "A trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Crump*, 995 A.2d at 1282–1283.

In its Rule 1925(b) opinion,[9] the trial court offered the following explanation for its re-sentencing of Appellant:

> [Appellant's] actions showed that he was unwilling or unable to take advantage of his treatment opportunities while on probation. Treatment is only effective if the individual

---

[9] This explanation is consistent with the remarks made by the trial court at the re-sentencing hearing and in its sentencing order. N.T., 3/14/2018, at 97-98; Order, 3/20/2018, at 1-3.

consistently attends his therapy sessions and follows the recommendations of his therapist. [Appellant] was not doing that. Instead of attending therapy every week as scheduled, [A]ppellant was missing therapy sessions for no apparent reason. Furthermore, he was not taking his psychotropic medications as directed. He [was not] using therapy to help him work through his issues and avoid engaging in prohibited behaviors. Instead, he was confessing after the fact, and then sometimes only after he was "caught" not being truthful such as the incident with the female from Craigslist that was only revealed after [A]ppellant failed his therapeutic polygraph.

\*\*\*

[A]ppellant also asserts that the imposition of consecutive periods of total incarceration for each of the remaining probationary sentences was manifestly excessive and an abuse of discretion. … The court did not impose consecutive sentences because it had any partiality, prejudice, bias or ill will against [A]ppellant. The court imposed consecutive sentences due to the nature of the offenses, the need to protect the public, and [A]ppellant's supervision history. The court found that the need to protect the public greatly outweighed [A]ppellant's rehabilitation needs in this case. Probation was not rehabilitating [A]ppellant. … According to [A]ppellant's own testimony, he was re-paroled on December 24, 2015 and by early 2016 he had met a [woman] on Craigslist and had a sexual encounter with her despite the [woman] saying "Stop, I can't do this." Although [A]ppellant stopped briefly, he kept making sexual advances until the [woman] relented and had sex with him. In March of 2017, [A]ppellant was viewing pornography and again was seeking casual sexual encounters through websites such as Back Pages and Craigslist. He [did not] discuss his urges to view pornography or these websites in his group therapy sessions to try to avoid violating the conditions of his probation nor did he address these issues immediately after he was caught. How could he? He missed four sessions between January 16, 2017 and March 10, 2017[,] and then, once Agent Daub found the pornography and websites in the browser history on [A]ppellant's phone on March 29, 2017, [A]ppellant missed his group therapy sessions on April 7, 2017; April 14, 2017; and April 25, 2017.

This also was not the first time that [A]ppellant's sexual encounters resulted in violations of his supervision. He was

- 16 -

unsuccessfully discharged from treatment with CCG and his parole was violated in 2015 due to hitting a partner prior to and after intercourse. He was before the court in 2015 for a probation violation hearing as well, but the court declined to revoke [A]ppellant's probationary sentences at that time. [A]ppellant's resumption of treatment with CCG in 2016 was his second chance at rehabilitation outside of a secure setting, but [A]ppellant failed to take advantage of it.

[A]ppellant was originally sentenced to a period of state incarceration followed by a lengthy term of probation. Unfortunately, [A]ppellant's conduct while on supervision showed that probation was not an effective rehabilitation tool. [A]ppellant continued to engage in conduct that created an undue risk that he would commit another crime. The consecutive sentences imposed by the court were necessary to protect the public.

[A]ppellant also contends the court had no further obligation to consider the impact on the original victim because there was neither an allegation that [A]ppellant participated in any misconduct involving the original victim nor any sexual behaviors toward any children. The court cannot agree. … Although his probation violations did not involve the original victim or sexual behaviors toward children, his violations involved high-risk behaviors. He viewed pornographic videos and visited inappropriate websites, he had contact with a minor without getting approval from Agent Daub and without an authorized supervisor being present, and he persisted in sexual advances toward an adult female despite her saying "Stop, I can't do this." All of these behaviors show that [A]ppellant was going down a slippery slope toward committing another offense.

Based on the foregoing [o]pinion, there was ample evidence to support the … imposition of consecutive sentences….

Trial Court Opinion, 7/6/2018, at 8-11.

Upon review, we conclude that the trial court's analysis thoroughly addresses all of Appellant's arguments regarding the discretionary aspects of his sentence, and we discern no abuse of discretion in the court's decision to

impose a sentence of total confinement in consecutive sentences. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/20/2018