**ST. ELIZABETH'S CHILD CARE CENTER, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2009.

Decided Jan. 7, 2010.

Reargument Denied En Banc March 16, 2010.

---

Philip J. Murren, Camp Hill, for petitioner.

Daniel Fellin, Sr. Counsel, Harrisburg, for respondent.

BEFORE: BUTLER, Judge, FRIEDMAN, Senior Judge, and QUIGLEY, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

St. Elizabeth's Child Care Center (St. Elizabeth's) petitions for review of the July 29, 2005, order of the Department of Public Welfare (DPW), Bureau of Hearings and Appeals (Bureau), which denied St. Elizabeth's appeal from an administrative order directing it to cease and desist operation of an uncertified child day care center. We affirm.

St. Elizabeth's is a nonprofit child day care center affiliated with the Roman Catholic Church. A DPW field representative visited St. Elizabeth's and determined it did not have a certificate of compliance as required by DPW regulations. 55 Pa.Code §§ 3270.3, 3270.11. Accordingly, DPW ordered St. Elizabeth's to cease and desist operating the center. St. Elizabeth's appealed to the Bureau, arguing that DPW lacked statutory authority to promulgate regulations requiring certification of nonprofit child day care centers. St. Elizabeth's also raised constitutional concerns regarding the regulations' impact on religious liberty. An administrative law judge (ALJ) concluded that Article IX of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 901–922, authorizes DPW to require nonprofit child day care centers to obtain a certificate of compliance. Because of statutory constraints, the ALJ did

not rule on the regulations' constitutionality. The Bureau adopted the ALJ's recommendation and denied St. Elizabeth's appeal.

Commonwealth Court reversed, holding that Article IX of the Code does not give DPW the power to require a nonprofit child day care center to obtain a certificate of compliance in order to operate. *St. Elizabeth's Child Care Center v. Department of Public Welfare*, 895 A.2d 1280 (Pa.Cmwlth.2006), *rev'd*, 600 Pa. 131, 963 A.2d 1274 (2009). Having so decided, this court did not address St. Elizabeth's constitutional arguments. However, on further appeal, our supreme court reversed on the issue of DPW's regulatory authority and remanded to this court for consideration of St. Elizabeth's constitutional claims. *St. Elizabeth's Child Care Center v. Department of Public Welfare*, 600 Pa. 131, 963 A.2d 1274 (2009). Accordingly, we now consider whether the application of DPW's licensing and regulatory scheme to St. Elizabeth's infringes upon St. Elizabeth's right to free exercise of religion in violation of the First Amendment to the U.S. Constitution,[1] Article I, Section 3 of the Pennsylvania Constitution[2] and/or the Religious Freedom Protection Act.[3]

Asserting that the primary purpose of its child care center is "to assist parents in raising their children and forming in them a Christian personality consistent with the values and beliefs of the Church and their parents," (St. Elizabeth's brief at 40), St. Elizabeth's argues that enforcement of DPW's regulatory scheme would significantly burden St. Elizabeth's religious mission. Relying on *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), St. Elizabeth's argues that the state failed to establish that it has a compelling interest justifying the infringement of its rights and/or that it cannot protect that compelling interest through less burdensome means.

DPW counters that no actual religious liberty interest is implicated in this case.

1. The free exercise clause of the First Amendment prohibits Congress from enacting laws that restrain the free exercise of religion. The Fourteenth Amendment incorporates the protection of the free exercise clause, rendering this prohibition applicable to state legislatures. *Wiest v. Mt. Lebanon School District*, 457 Pa. 166, 320 A.2d 362 (1974).

2. Article I, Section 3 of the Pennsylvania Constitution provides:

   All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship.

   Pa. Const., Art. I, § 3. The protection of rights afforded by this section of our state constitution does not transcend the protection of the First Amendment of the U.S. Constitution. *Wiest*.

3. Act of December 9, 2002, P.L. 1701, 71 P.S. §§ 2401–2407. The RFPA prohibits the state from imposing substantial burdens on the free exercise of religion without a compelling interest and a showing that the least restrictive means have been employed to satisfy that interest. *Combs v. Homer–Center School District*, 540 F.3d 231 (3d Cir.2008). The RFPA defines "substantially burden" as an agency action which does any of the following: (1) significantly constrains conduct or expression mandated by a person's sincerely held religious beliefs; (2) significantly curtails a person's ability to express adherence to his religious faith; (3) denies a person a reasonable opportunity to engage in activities which are fundamental to the person's religion; or (4) compels conduct or expression which violates a specific tenet of a person's religious faith. Section 3 of the RFPA, 71 P.S. § 2403.

DPW also argues that, in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the United States Supreme Court abandoned the compelling state interest standard of review and held that states are free to enact and enforce facially neutral laws of general applicability even though they may interfere with the religious practices of some individuals. According to DPW, the *Sherbert/Yoder* compelling interest standard of review is not applicable in this case, because the regulations at issue constitute neutral laws of general applicability that are subject to a rational basis standard of review.

St. Elizabeth's responds that an exception for claims involving "hybrid rights"

was recognized in *Smith* and is applicable here. However, St. Elizabeth's acknowledges that, regardless of which standard of review applies, St. Elizabeth's first must establish that the application of DPW regulations substantially burdens St. Elizabeth's free exercise of religion. *Wiest v. Mt. Lebanon School District*, 457 Pa. 166, 320 A.2d 362 (1974). We conclude that St. Elizabeth's has not satisfied its threshold burden.[4]

■ St. Elizabeth's first characterizes DPW's licensing requirement as a prior restraint on its core religious functions. In support of this argument, St. Elizabeth's contends that the regulations at 55 Pa.Code §§ 3270.1,[5] 3270.101,[6] 3270.111[7] and 3270.113[8] are designed to promote

4. For this reason, it is not necessary to address St. Elizabeth's argument concerning the applicable standard of review or its assertion that the decision in *Smith* does not diminish the protection afforded by Article I, Section 3 of the Pennsylvania Constitution.

5. § 3270.1 Introduction

This chapter is promulgated to facilitate the safe and healthful care of a child in a child day care center and to support families by providing care that promotes the emotional, cognitive, communicative, perceptual-motor, physical and social development of the child.
55 Pa.Code § 3270.1.

6. § 3270.101 Type of play equipment
(a) Play equipment and materials appropriate to the developmental needs, individual interests and ages of the children shall be provided in sufficient amount and variety to preclude long waits for use.
(b) Play equipment shall facilitate the child's emotional, cognitive, communicative, perceptual-motor, physical and social development.
(c) Play equipment and materials shall include items from the following categories:
(1) Materials for dramatic role playing.
(2) Toys and materials for cognitive development.
(3) Toys and materials for visual development.

(4) Toys and materials for auditory development.
(5) Toys to handle and manipulate and art materials for tactile development.
(6) Toys and equipment for large muscle development.
55 Pa.Code §§ 3270.101.

7. § 3270.111 Daily Activities
(a) A written plan of daily activities and routines, including a time for free play shall be established for each group. The plan shall be flexible to accommodate the needs of individual children and the dynamics of the group.
(b) The written plan shall be posted in the group space.
(c) Daily activities shall promote the development of skills, social competence and self-esteem. Daily experiences shall recognize the child as an individual and give some choice of activities that respect personal privacy, lifestyle and cultural background.
55 Pa.Code § 3270.111.

8. § 3270.113 Supervision of Children
(a) Children on the facility premises and on facility excursions off the premises shall be supervised by a staff person at all times. Outdoor play space used by the facility is considered part of the facility premises.

social competence and self-esteem and that, because opinions within the child care community vary as to what constitutes proper social competence and self-esteem, enforcement of these regulations will require subjective determinations by DPW inspectors. Noting that governmental or secular world views may frequently be at odds with the Church's view of what constitutes proper social development, St. Elizabeth's asserts that it would be difficult and intrusive to have government bureaucrats evaluate its religious ministries under standards that are not part of Church teaching or are at variance with it. However, St. Elizabeth's does not identify the specific impact of any particular regulation; instead, its prior restraint argument consists of vague and speculative assertions.

St. Elizabeth's also contends that, because the purpose of its child care facility is to contribute to the formation of children's religious beliefs, the child care center is engaged in missionary evangelism similar to preaching privileges protected from a license tax in *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). However, St. Elizabeth's does not explain how the regulations at issue interfere with the facility's ability to communicate Church teachings.

Next, arguing that it must be free to choose employees with specific religious beliefs, St. Elizabeth's asserts that the regulations in Chapter 20 place restrictions on the center's hiring decisions. For example, St. Elizabeth's complains that "Appendix A—Civil Rights Compliance–Statement of Policy," (Brief, Appendix C), requires child care facilities to implement civil rights policies and procedures in accordance with applicable civil rights laws, thereby requiring that St. Elizabeth's employment actions be taken without regard to religious creed. St. Elizabeth's notes that federal and state civil rights laws include exemptions for religious facilities but that DPW's regulations do not. However, we accept DPW's construction of this provision as a statement of policy that merely requires compliance with existing statutes and regulations and does not impose any additional requirements. We also note that each of the civil rights laws that otherwise affect religious organizations (that do not accept government funding) contain an exception for religion that would preclude the kind of interference or control that St. Elizabeth's fears will result.

St. Elizabeth's further complains that some of DPW's regulations require all

(1) Each staff person shall be assigned the responsibility for supervision of specific children. The staff person shall know the names and whereabouts of the children in his assigned group. The staff person shall be physically present with the children in his group on the facility premises and on facility excursions off the facility premises.
(2) The requirement for supervision on and off the facility premises includes compliance with the staff:child ratio requirements in §§ 3270.51–3270.55 (relating to staff:child ratio).
(b) A facility person may not use any form of physical punishment, including spanking a child.

(c) A facility person may not single out a child for ridicule, threaten harm to the child or the child's family and may not specifically aim to degrade the child or the child's family.
(d) A facility person may not use harsh, demeaning or abusive language in the presence of children.
(e) A facility person may not restrain a child by using bonds, ties or straps to restrict a child's movement or by enclosing the child in a confined space, closet or locked room. The prohibition against restraining a child does not apply to the use of adaptive equipment prescribed for a child with special needs.
55 Pa.Code § 3270.113.

staff to have governmentally designated educational degrees before they can be employed in various positions. 55 Pa.Code §§ 3270.34–3270.37. According to St. Elizabeth's, uniform training for staff would be one of the most effective means of attempting to exercise governmental control over its instructional and developmental program. However, St. Elizabeth's again is short on specifics and does not identify how the staff educational requirements impose a burden on its religious liberty. Moreover, waivers from the regulatory standards set forth at 55 Pa.Code §§ 3270.34–36,[9] 3270.101–108 (relating to equipment) and 3270.111–118 (relating to programming) may be obtained pursuant to 55 Pa.Code § 3270.13.

Although St. Elizabeth's has analyzed and distinguished a variety of cases addressing constitutional issues, the remainder of its argument consists merely of conclusory statements that DPW's regulations substantially burden St. Elizabeth's constitutionally protected religious liberties. Because St. Elizabeth's has failed to identify any actual or imminent infringement upon St. Elizabeth's rights, its constitutional claims necessarily fail.

Accordingly, we affirm.

### ORDER

AND NOW, this 7th day of January, 2010, the order of the Department of Public Welfare, dated July 29, 2005, is hereby affirmed.

CONCURRING OPINION BY Senior Judge QUIGLEY.

In my judgment, St. Elizabeth's justifiably points out significant areas of legitimate concern. For example, it suggests

that subjectivity will be involved with respect to the nature of evaluating issues concerning self-esteem. It also suggests that compliance with civil rights rules (however laudable generally) and other non-discrimination issues, could cause the requirement of hiring persons who do not share similar religious beliefs. St. Elizabeth's further points out that the government requirement of designated educational degrees could again impact on this *day care center* in a way contrary to St. Elizabeth's religious mission.

However, as the majority correctly points out, St. Elizabeth's is "short on specifics" sufficient to support a present religious liberty issue.

We can only hope that when an issue arises—probably by agency action with respect to certificate of compliance (license?) an adequate procedure will exist to not only safeguard children from harm, but provide respect for the religious liberty issues not presently, in advance of events, threatened here.

9. 55 Pa.Code § 3270.37 requires that an aide who is responsible for assisting with daily program activities have either: (1) a high school diploma or GED; (2) an 8th grade education and enrollment in an approved training curriculum; or (3) an 8th grade education and two years of experience with children.