IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Frank Katonka,                     :
                          Petitioner    :
                                        :
          v.                            :    No. 707 C.D. 2021
                                        :    Submitted: July 1, 2022
Pennsylvania Parole Board,              :
                          Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                    FILED: December 29, 2022

          Paul Frank Katonka (Katonka) petitions for review of the Pennsylvania
Parole Board's (Board) decision, mailed May 24, 2021, denying his request for
administrative relief.  Victoria H. Vidt, Esq. (Counsel), Katonka's court-appointed
counsel, has filed an application to withdraw because the appeal lacks merit.  We
grant Counsel's application to withdraw and affirm the Board's decision.

## I. BACKGROUND

          On November 26, 2012, Katonka pleaded guilty to sixteen counts
arising from the sexual abuse of his stepdaughter.  The trial court sentenced Katonka
to an aggregate term of 8 to 16 years of incarceration, followed by 19 years of
probation.  Additionally, the trial court determined that Katonka was a Tier III
offender under the Sexual Offender Registration and Notification Act (SORNA).[1]
Katonka did not file a direct appeal.[2]

_____

[1] 42 Pa.C.S. §§ 9799.10 to 9799.41.
[2] Katonka has filed numerous unsuccessful appeals challenging collateral aspects of his
sentence, but they are not pertinent to the instant matter.

Upon his parole, Katonka agreed to certain conditions imposed on sexual offenders, including submission to polygraph examinations. *See* Standard Special Conditions for Sex Offenders, 3/6/18, at 1. However, Katonka was unsuccessfully discharged from his sexual offender treatment program at FAACT after, *inter alia*, failing a polygraph examination. *See* FACCT Discharge Summ., 6/9/20, at 1.[3] Shortly thereafter, a warrant was issued for Katonka's arrest for violation of his parole, and he was taken into custody. *See* Warrant, 6/11/20, at 1.

The Board notified Katonka of his technical violation as well as his rights to a hearing and counsel. *See* Notice of Charges and Hearing, 7/7/20, at 1; Offender Rights and Bd. Hr'gs, 7/7/20, at 1. Katonka signed a document waiving those rights and admitting to the violation. *See* Waiver of Violation Hr'g & Counsel/Admission Form (Waiver), 7/7/20, at 1. Thereafter, the Board recommitted Katonka as a technical parole violator due to his failure to successfully complete sex offender treatment. *See* Notice of Bd. Decision, 7/10/22, at 1.

Katonka filed administrative remedies forms on August 19, August 26, and September 4, 2020. By order dated April 5, 2021 and mailed May 24, 2021, the Board denied Katonka's requests for administrative relief. Katonka *pro se* and timely filed a petition for review with this Court. The Court appointed Counsel to

---

[3] Katonka was unsuccessfully discharged due to failure to follow through with the recommended treatment plan; failure to actively and productively participate in the sex offender specific outpatient treatment program due to his inability to be truthful with his treatment provider; and monitoring and maintenance polygraph results indicating "significant" responses when asked questions about engaging in continued deviant sexual behavior. *See* FACCT Discharge Summ., 6/9/20, at 1. The discharge further noted that Katonka's treatment plan goals were not attained, he had significant indicated responses, and had continued to engage in high-risk behaviors. *Id.*

represent Katonka in this appeal, but Counsel has filed an application to withdraw and an *Anders*[4] Brief.

## II. *TURNER/FINLEY* REQUIREMENTS

Accordingly, we first determine whether Counsel's application to withdraw complies with the *Turner/Finley* requirements. A *Turner/Finley* letter must detail "the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw." *Zerby v. Shanon*, 964 A.2d 956, 960 (Pa. Cmwlth. 2009) (citation omitted). Further, counsel must "also send to the petitioner: (1) a copy of the 'no-merit' letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel." *Id*. (citation omitted). If counsel satisfies these technical requirements, we must then conduct our own review of the merits of the case. *Id.* If we agree that the claims are without merit, we will permit counsel to withdraw and deny relief. *Id.*

---

[4] *See Anders v. California*, 386 U.S. 738 (1967). This Court has held that "where there is a constitutional right to counsel, counsel seeking to withdraw from representation of a petitioner in an appeal of a determination of the Board should file an *Anders* brief." *Hughes v. Pa. Bd. of Prob. and Parole*, 977 A.2d 19, 25 (Pa. Cmwlth. 2009). In all other cases, it is sufficient that counsel file a *Turner/Finley* no-merit letter. *Id.* at 26; *see Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). In appeals from parole revocation, a constitutional right to counsel arises only where a parolee has "a colorable claim" that he has "not committed the alleged violation of the conditions upon which he is at liberty" or that, "even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present." *Hughes*, 977 A.2d at 26 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). Here, Katonka has a statutory rather than a constitutional right to counsel because he admitted to the parole violation with which the Board charged him. *See* Waiver. Regardless, we decline to deny Counsel's application to withdraw on this basis. *See Seilhamer v. Pa. Bd. of Probation and Parole*, 996 A.2d 40, 42-43 (Pa. Cmwlth. 2010) (noting the Court may accept an *Anders* brief when a *Turner/Finley* letter would suffice).

Upon review, we conclude Counsel has satisfied the technical requirements of *Turner/Finley*. Counsel discussed the nature of her review, identified the issues raised in Katonka's administrative appeal, and explained why those issues lack merit. Counsel's Br. at 11-40. Counsel sent a copy of the brief and application to withdraw to Katonka and advised him of his right to proceed *pro se* or with new counsel. *See* Appl. to Withdraw as Counsel, 10/22/21, at 1-5; Counsel's Br. at Appendix E. Katonka has not retained new counsel and has not filed a *pro se* response. Accordingly, we review the merits of Katonka's appeal.

### III. ISSUES

Counsel has identified a number of issues raised in Katonka's *pro se* appeal. First, Katonka argues that the polygraph examination was the sole basis for his parole revocation, contrary to established case law. Counsel's Br. at 12. Second, Katonka contends that he was coerced to sign the waiver forms by his parole agent. *Id*. at 13. Third, the administration of the polygraph, requiring Katonka to purposefully lie to establish a baseline, violates the free exercise of his religion pursuant to the First Amendment of the United States Constitution and Article 1, Section 3 of the Pennsylvania State Constitution. *Id.* Fourth, Katonka argues that the use of polygraphs as mandatory treatment violates his right to protect his reputation under the Pennsylvania Constitution. *Id.* Fifth, Katonka argues that an arrest based on the therapeutic polygraph is a violation of the Fourth Amendment of the United States Constitution as an unreasonable search and seizure, and a violation of the Fourteenth Amendment as a violation of due process. *Id*.

## IV. DISCUSSION[5]

### A. Polygraph as Sole Basis for Revocation

First, Katonka contends that his parole revocation was based solely on the polygraph examination, contrary to the established case law of *Commonwealth v. A.R.*, 80 A.3d 1180 (Pa. 2013).[6] Counsel's Br. at 14. This claim lacks merit.

Katonka's reliance on *A.R.* is misplaced because the Pennsylvania Supreme Court did not adopt the Superior Court's conclusion that polygraph results cannot serve as the sole basis for a probation violation. *See A.R.*, 80 A.3d at 1184 n.6. Further, Katonka was discharged from sex offender treatment due to 1) his failure to follow through with recommended treatment; 2) his failure to actively and productively participate in outpatient treatment as evidenced by his failure to be truthful; and 3) his failure of the polygraph exam by having significant responses pertaining to engaging in continued deviant sexual behavior. *See* Supervision History, 6/17/20. Finally, Katonka signed a waiver admitting to violating his parole condition. *See* Waiver. Thus, the Board relied upon substantial evidence to revoke Katonka's parole; the polygraph did not constitute the sole reason for revocation;

---

[5] Our standard of review is limited to determining whether the Board committed an error of law, whether its findings are supported by substantial evidence, and whether its decision violated constitutional rights. 2 Pa.C.S. § 704.

[6] In *A.R.*, the defendant was convicted of various charges as a result of an incident where he videotaped his minor stepdaughter undressing in the bathroom. *Id.* at 1180. He was ordered to undergo a sex offender evaluation and follow all treatment recommendations, which included therapeutic polygraph examinations. *Id.* at 1180-81. On appeal, the Superior Court affirmed the admission of the results of the defendant's therapeutic polygraph examination into evidence at his violation of probation (VOP) hearing. *Id.* at 1181. The Court further held that such results were admissible to support the underlying violation so long as the results were not the sole basis for the revocation petition, they did not reveal uncharged criminal conduct on the part of the defendant, and they were not used for purposes of the investigation of criminal conduct. *Id.* at 1181-82. The Pennsylvania Supreme Court affirmed in part but expressly declined to address the Superior Court's conclusion that therapeutic polygraph examination results cannot serve as the sole basis for probation revocation. *Id*. at 1184 n.6.

and regardless, Katonka's reliance on *A.R.* is misplaced. *A.R.*, 80 A.3d at 1184 n.6; *Zerby*, 964 A.2d at 960.

## B. Alleged Coercion

In his second claim, Katonka contends that he was coerced to sign the waiver forms by his parole agent. Counsel's Br. at 17. According to Katonka, his parole officer told Katonka that if he wanted an attorney and a hearing, he would remain incarcerated for a lengthy period of time due to the COVID-19 pandemic and limits placed upon attorney visitation. *Id*. at 17-18.

The waiver form used by the Board has been upheld by various courts of this state as constitutional. *See, e.g.*, *Prebella v. Pa. Bd. of Prob. and Parole*, 942 A.2d 257, 261-62 (Pa. Cmwlth. 2008) (requiring only that the Board follow its own regulations and provide "necessary information" to the offender prior to signing the form). The form provided Katonka notice of his rights to a hearing and to counsel. *See* Waiver. Katonka then waived these rights "with full knowledge and understanding . . . of [his] own free will, without any promise, threat or coercion." Waiver. The waiver form signed by Katonka conforms to the required legal standards. *See Prebella*, 942 A.2d at 261-62. Accordingly, this issue lacks merit. *Zerby*, 964 A.2d at 960.

## C. Violation of First Amendment Free Exercise of Religion

In his third claim, Katonka contends that the administration of a polygraph examination that requires a parolee to lie to establish a testing baseline violates the free exercise of his religion pursuant to the First Amendment of the United States Constitution, U.S. Const. amend. I; and article 1, section 3 of the Pennsylvania Constitution, Pa. Const. art I, § 3. Counsel's Br. at 20. This claim is without merit.

"To determine whether religious rights are unconstitutionally impinged, there are no bright line tests, but instead an analysis is made of the statute at issue and a balancing of the interests involved." *Kocher v. Bickley*, 722 A.3d 756, 759 (Pa. Cmwlth. 1999).[7] Provided that the legislation does not facially discriminate against a particular religious belief or against religion generally, the government need only demonstrate that a challenged requirement is neutral, uniform, and rationally related to a legitimate public interest. *Kocher*, 722 A.2d at 759 (citing *Nordlinger v. Hahn*, 505 U.S. 1 (1992) (regulatory statute without unconstitutional classification is accorded a strong presumption of validity and is valid if there is a rational basis for the law, *i.e.*, reasonably related to accomplishing a legitimate state interest)).

The use of therapeutic polygraphs is not enshrined in state statute but, rather, is contained within the standard special conditions for sex offenders on parole. Katonka's special conditions included mandatory sex offender evaluation treatment from an approved provider and successful completion "of all treatment recommendations, including polygraph examinations[.]" Standard Special Conditions for Sex Offenders, 3/7/2018, at 1. As a standard special condition, this

---

[7] *Kocher* involved applicants for a learner's permit alleging that the requirement to provide a social security number violated their religious rights under the free exercise clause. *Kocher*, 722 A.2d at 758. The *Kocher* appellants were not, of course, parolees. However, the general test for determining whether a particular statute violates the First Amendment free exercise clause, generally, is the same regardless of the context in which it is applied. *See, e.g.*, *Meggett v. Dep't of Corr.*, 892 A.2d 872 (Pa. Cmwlth. 2006) (prisoner argued that regulations regarding the length and styling of inmate's hair violated his right to freedom of religion); *Kaite v. Uenmployment Comp. Bd. of Rev.*, 175 A.3d 1132 (Pa. Cmwlth. 2017) (unemployment claimant alleged it was against her religious beliefs to be fingerprinted); *Thomas v. Corbett*, 90 A.3d 789 (Pa. Cmwlth. 2014) (complaint against state governor and Department of Corrections asserting violations of constitutional rights and Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc-1-2000cc-5).

applies to all sex offenders regardless of religious affiliation in a facially neutral manner. On its face, the requirement of a therapeutic polygraph test does not implicate religion in any way.

Further, Pennsylvania courts have upheld the use of therapeutic polygraphs in the context of other constitutional challenges, observing that "the therapeutic polygraph is an essential tool for a therapist whose job it is to reveal an offender's deception and encourage him or her to confront his or her urges and deviant behavior." *Commonwealth v. Shrawder*, 940 A.2d 436, 443 (Pa. Super. 2007) (holding that therapeutic polygraphs were a reasonable requirement for probation and rejecting Fifth Amendment, U.S. Const. amend V, challenge). The tests "further the primary goal of counseling as part of a sexual offender's sentence, which is to rehabilitate the offender and prevent recidivism, with reasonably small incremental deprivations of the offender's liberty." *Id.* Courts of this state have also long upheld the notion that the regulation and treatment of sex offenders promotes the legitimate state interest of protecting public safety and welfare. *Jackson v. Commonwealth*, 143 A.3d 468, 475 n.11 (Pa. Cmwlth. 2016) (discussing the regulation and treatment of sex offenders in the context of sex offender registration laws).

Katonka makes no averment that he subscribes to a specific faith or which specific tenet of this faith is violated by the imposition of therapeutic polygraphs. Rather, he makes vague citations to "the Halleluyah Scriptures" and contends that "lying is sinful and not to be done to be in right standing with my Creator." Counsel's Br. at Appendix C. However, even assuming that his religious beliefs are "sincerely held," *see*, *e.g.*, *Meggett*, 892 A.2d at 881, "states are free to enact and enforce facially neutral laws of general applicability even though they may

8

interfere with the religious practices of some individuals." *St. Elizabeth's Child Care Ctr. v. Dep't of Pub. Welfare*, 989 A.2d 52, 55 (Pa. Cmwlth. 2010). The imposition of therapeutic polygraph examinations is a facially neutral requirement of sex offender treatment, in which the state has a legitimate interest of protecting public safety and welfare. *Jackson*, 143 A.3d at 475 n.11; *St. Elizabeth's*, 989 A.2d at 55; *Kocher*, 722 A.2d at 759. Accordingly, this issue is without merit. *Zerby*, 964 A.2d at 960.

## D. Violation of Right to Reputation

In Katonka's fourth claim, he contends that the use of polygraphs as mandatory treatment violates his right to protect his reputation under article 1, section 1 of the Pennsylvania Constitution. Counsel's Br. at 30. He claims that he is being labeled as a "liar" and has a "mark of Cain" placed upon him due to the use of polygraph testing and that, accordingly, his reputation interest is violated. *Id*. at 30-31.

The Pennsylvania Constitution provides for certain "inherent and indefeasible rights" which includes the protection of reputation. Pa. Const. art. I, § 1; *see also Pa. Bar Ass'n v. Cmwlth. of Pa.*, 607 A.2d 850 (Pa. Cmwlth. 1992) (recognizing the right to reputation as a fundamental right under the state constitution). When considering laws infringing upon fundamental rights such as the right to reputation, courts use a substantive due process analysis. *Nixon v. Commonwealth*, 839 A.2d 277, 286-87 (Pa. 2003). Under this analysis, "courts must weigh the rights infringed upon by the law against the interest sought to be achieved by it," as well as considering the relationship between the law and the interest. *Id.* Where laws infringe upon fundamental rights, courts apply a strict scrutiny test wherein "a law may only be deemed constitutional if it is narrowly tailored to a

9

compelling state interest." *Id.* When considering the right to reputation, the "inquiry must necessarily focus on the extent to which the information [affecting reputation] is readily available and/or accessible." *R. v. Dep't of Pub. Welfare*, 636 A.2d 142, 149 (Pa. 1994).

Katonka has not demonstrated that the Board has infringed upon his right to reputation. The fact that Katonka was required to undergo polygraph examination is not known to the general public, nor are the results of the polygraph examination. Rather, the results are disseminated only between the examiner, the Board, and Katonka himself. In any event, Katonka, who is required to register publicly as a sex offender, would not suffer any deprivation of reputation that he has not already undergone as a result of his registration requirements, so any adverse effects on his reputation are limited.[8] *See*, *e.g.*, *R.*, 636 A.2d at 150 (noting that statute limits disclosure of defendant's identity to small number of people and adverse effects are accordingly limited). Accordingly, this issue lacks merit. *Zerby*, 964 A.2d at 960.

### E. Unreasonable Search and Seizure

In Katonka's fifth issue, he contends that an arrest based upon the therapeutic polygraph is a violation of the Fourth Amendment as an unreasonable search or seizure, *see* U.S. Const. amend. IV. Counsel's Br. at 35. As Counsel notes, Katonka is not "complaining about the lack of a search warrant . . . rather, he [contends] that a polygraph examination cannot be a compelling reason for a parole officer to arrest him." *Id.* at 37. Counsel avers that Katonka provided no case law

---

[8] Further, we note that the Commonwealth has a compelling interest in public safety. *See*, *e.g.*, *Commonwealth v. Howe*, 842 A.2d 436, 446 (Pa. Super. 2004) (noting that the defendant's interest in avoiding disclosure of personal information via sex offender registration was outweighed by the Commonwealth's compelling interest in public safety and protecting its citizens from harm).

support for this proposition and that she was unable to locate any case law as well. Counsel's Br. at 37. Our own research has not returned any convincing authority to support Katonka's unpersuasive argument.

Further, as Counsel correctly notes, the Board is authorized to recommit a parolee as a technical violator whenever that parolee violates the terms and conditions of his parole. 61 Pa. C.S. § 6138(c)(1). Katonka admitted to violating the terms of his parole, and accordingly, the Board was empowered by statute to take him into custody. *See* Waiver; 61 Pa. C.S. § 6138(c)(1). Accordingly, this issue lacks merit. *Zerby*, 964 A.2d at 960.

### F. Due Process Violation

In Katonka's sixth and final issue, he contends that the use of the therapeutic polygraph is a violation of Due Process under the Fourteenth Amendment of the United States Constitution, U.S. Const. samend. XIV. Counsel's Br. at 38.

With regard to the due process requirements afforded to parolees, the safeguards include: 1) written notice of the claimed violations of parole; 2) disclosures of evidence against the parolee; 3) the opportunity to be heard in person and to present witnesses and documentary evidence; 4) the right to confront and cross-examine adverse witnesses; 5) a neutral and detached body such as a parole board; and 6) a written statement by the factfinders as to the evidence relied upon and reasons for revoking parole. *Blackwell v. Pa. Bd. of Prob. and Parole*, 516 A.2d 856, 858 (Pa. Cmwlth. 1986). Counsel reviewed the certified record and found no evidence of any failure to inform Katonka of the reasons for his parole violation or any showing of the lack of a neutral and detached board reviewing his case. Counsel's Br. at 39. The Board provided Katonka with written notice of the charges,

11

its findings, and the reasons for those findings. *Id.* Further, Katonka executed a valid waiver of counsel form, admitting the violations and waiving his right to a hearing. *Id.* Counsel concludes that there was no evidence of any denial of due process and the record supports this conclusion. *Id.* Accordingly, this issue lacks merit. *Zerby*, 964 A.2d at 960.

## V. CONCLUSION

For these reasons, we conclude Counsel has fulfilled the requirements of *Turner/Finley*, and our independent review of the record confirms that Katonka's appeal lacks merit. Accordingly, we grant Counsel's application to withdraw her appearance and affirm the Board's decision. *See Zerby*, 964 A.2d at 960.

LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Frank Katonka,  :
               Petitioner  :
                 :
       v.  :  No. 707 C.D. 2022
                 :
Pennsylvania Parole Board,  :
               Respondent  :

# **O R D E R**

AND NOW, this 29th day of December, 2022, the Application to Withdraw, filed by appointed counsel, Victoria H. Vidt, Esq., on October 22, 2021, is GRANTED; further, the decision of the Pennsylvania Parole Board to deny Petitioner's administrative appeal, mailed May 24, 2021, is AFFIRMED.

                                      _____
                                      LORI A. DUMAS, Judge