IN THE COMMONWEALTH COURT OF PENNSYLVANIA

South Hills Catholic Academy,           :
                              Petitioner :
                                         :
           v.                            : No.  563 C.D. 2023
                                         : Argued:  October 10, 2023
Department of Human Services,            :
                             Respondent  :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE WALLACE                         FILED:  January 11, 2024


South Hills Catholic Academy (Private School) petitions for review of the Department of Human Services' (the Department) May 18, 2023 order denying its appeal of an Administrative Law Judge's (ALJ) order that denied Private School's Motion to Dismiss the Department's March 17, 2022 cease and desist letter.  In its cease and desist letter, the Department determined Private School's Guardian Angels Program (the Program) was an uncertified child care center and ordered Private School to stop operating the Program.  In this appeal, which Private School asserts is an appeal as of right from a collateral order pursuant to Pennsylvania Rule of Appellate Procedure 313(b) (Rule 313(b)), Private School's primary argument is that the Department does not have jurisdiction to regulate the Program.

On June 6, 2023, the Department filed a Motion to Quash Private School's petition for review, arguing Private School is not entitled to appeal the Department's

May 18, 2023 order as of right because that order is not a collateral order pursuant to Rule 313(b). After the parties filed memoranda of law on this issue, this Court issued an Order on July 31, 2023, explaining it would rule on the Department's Motion to Quash along with the merits of Private School's appeal.

Upon review, we conclude the Department's May 18, 2023 order is a collateral order pursuant to Rule 313(b), entitling Private School to maintain this appeal as of right. As a result, we deny the Department's Motion to Quash. Because we agree with the Department's determination, however, we affirm the Department's order.

## I. Factual and Procedural Background

Private School is a private, non-profit Catholic School in Mt. Lebanon, Pennsylvania. Private School readily admits it operates the Program, which "permits parents and guardians of enrolled students to drop students off up to 45 minutes prior to the first class in the morning and also permits students to remain after school up to 90 minutes after the last official class at the end of the school day." Petition for Review, 6/2/23, at 3.

On February 23, 2022, the Department sent a representative to Private School to conduct an inspection of the Program. Reproduced Record (R.R.) at 2. On March 17, 2022, the Department mailed a letter to Private School, determining Private School was "operating a child care center without the required certificate of compliance in violation of Department regulations" and ordering Private School to "cease and desist operation of [its] uncertified child care facility." *Id*. In the Department's March 17, 2022 letter, the Department asserted it had authority to close the Program because

> [t]he Department has supervisory authority over a nonprofit facility in
> which seven or more children unrelated to the operator receive care

2

([Sections 901-902 of the Human Services Code[1],] 62 P.S. §§ 901 – 902; 55 Pa. Code § 3270.3; St. Elizabeth's Child Care Center v. [Dep't of Pub. Welfare], 963 A.2d 1274 (Pa. 2009)). The Department's regulations for child care centers are applicable to facilities in which out-of-home care is provided, at any one time, for part of the 24-hour day to seven or more children (55 Pa. Code § 3270.3(a)). A child care center is defined as any premises in which child care is provided simultaneously to seven or more children who are not relatives of the operator (55 Pa. Code § 3270.4). Operation of a child care center without a certificate of compliance from the Department is prohibited (55 Pa. Code [§§ 20.1 – 20.82]; 55 Pa. Code § 3270.11(a)).

*Id.* The Department's letter also explained Private School's right to appeal. *Id.* at 3.

By letter dated March 29, 2022, Private School appealed the Department's cease and desist letter. R.R. at 4. The Department referred Private School's appeal to its Bureau of Hearings and Appeals (BHA) for disposition. *Id.* at 5. Before the BHA was able to schedule a hearing on the merits of Private School's appeal, Private School filed a Motion to Dismiss the Department's cease and desist letter (Motion to Dismiss). *See id.* at 6-12. In its Motion to Dismiss, Private School asserted the Human Services Code (Code) does not provide the Department with jurisdiction to regulate the Program. *Id.*

On December 28, 2022, ALJ Jacob Herzing (ALJ Herzing) held argument on Private School's Motion to Dismiss. *See* Notes of Testimony (N.T.), 12/28/22, at 1-45; R.R. at 13-57. At argument, the Department's counsel conceded the purpose of the hearing was to "rule on the motion to dismiss, based on the law, without any regard to any facts of this case whatsoever." N.T., 12/28/22, at 11; R.R. at 23. On April 24, 2023, ALJ Herzing issued an Adjudication and Order, rendering the following relevant findings of fact:

---

[1]  Formerly the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101-1503.

1) [Private School] is located at 550 Sleepy Hollow Road, Pittsburgh, PA 15228.

2) [Private School] operates an independent non-profit Catholic school licensed by the Pennsylvania Department of Education.

3) [Private School] operates a "Guardian Angels" program that allowed parents and guardians of enrolled students to drop off their children up to 45 minutes prior to the start of school and pick up their children within 90 minutes after the end of the school day.

4) On February 23, 2022, the Department inspected [Private School] to determine whether [Private School] operated a child care center.

5) On March 17, 2022, the Department determined [Private School] operated a child care center.

6) On March 17, 2022, the Department ordered [Private School] to cease and desist the operation of the unlicensed child care center.

7) On April 12, 2022, [Private School] appealed the Department's March 17, 2022, cease and desist order.

R.R. at 70-72 (internal citations omitted). After reviewing the relevant provisions of the Code and the Department's regulations, ALJ Herzing concluded:

[T]he Department's regulations require private academic schools who [sic] operate child care centers before and after the hours of instruction to be licensed and subject to Department regulatory oversight. In these situations, the legal entity must be dually licensed by the Department and the Pennsylvania Department of Education. Therefore, [Private School]'s licensure as a private academic school by the Pennsylvania Department of Education did not prohibit the Department from determining whether [Private School] operated a child care center or restrict the Department's regulatory oversight.

*Id.* at 77. Accordingly, ALJ Herzing denied Private School's Motion to Dismiss. *Id.*

4

Private School filed an interlocutory appeal of ALJ Herzing's order. *See* R.R. at 78-81. By order dated May 18, 2023 (Department's Order), the Department's Acting Secretary denied Private School's interlocutory appeal. *See* Certified Record (C.R.), Item #6. On June 2, 2023, Private School filed a Petition for Review in this Court.

On appeal, Private School argues the Department does not have authority to regulate its activities, and it requests we reverse the Department's Order and declare the Department "does not have jurisdiction over [Private School] and therefore no authority to issue a cease and desist order" to Private School. Petition for Review, 6/2/23, at 11. Private School also argues it should be immune from the Department's oversight due to its rights under various religious freedom clauses in the United States and Pennsylvania Constitutions.

## II. Analysis

### A. Appealability of Order

Private School admits the Department's Order is appealable as of right only if it qualifies as a collateral order under Rule 313(b). Thus, we must determine if the Department's Order is a collateral order under Rule 313(b) before we can address the merits of Private School's appeal. "The appealability of an order under the [Pennsylvania Rule of Appellate Procedure] 313 collateral order doctrine presents a question of law, over which our standard of review is *de novo* and our scope of review is plenary." *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 365 (Pa. 2021) (citation omitted) (italics added). "The collateral order rule is to be applied narrowly, inasmuch as it is an exception to the rule of finality." *Colonial Sch. Dist. v. Montgomery Co. Bd. of Assessment Appeals*, 232 A.3d 1051, 1056 (Pa. Cmwlth. 2020) (citation omitted).

5

Pennsylvania Rule of Appellate Procedure 313, titled "Collateral Orders" states:

> **(a) General Rule.** An appeal may be taken as of right from a collateral order of a trial court or other government unit.
>
> **(b) Definition.** A collateral order is an order [(1)] separable from and collateral to the main cause of action where [(2)] the right involved is too important to be denied review and [(3)] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa. R.A.P. 313 (bold in original, clause numbers added).

Under the first prong of Rule 313(b)'s definition of a collateral order, "an order is separable from the main cause of action if 'it can be resolved without analysis of the merits of the underlying dispute' and if it is 'entirely distinct from the underlying issues in the case.'" *Shearer v. Hafer*, 177 A.3d 850, 858 (Pa. 2018) (quoting *Commonwealth v. Blystone*, 119 A.3d 306, 312 (Pa. 2015)). "If the order does not affect the merits of the underlying claim, it is separable." *Colonial Sch. Dist.*, 232 A.3d at 1057.

Under the second prong, "an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by the final judgment rule." *Geniviva v. Frisk*, 725 A.2d 1209, 1213 (Pa. 1999) (citation omitted). "[I]t is not sufficient that the issue be important to the particular parties. Rather[,] it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Id.* at 1214. "Generally, the implication of due process concerns is too important to be denied review." *Com. ex rel. Kane v. Philip Morris, Inc.*, 128 A.3d 334, 344 (Pa. Cmwlth. 2015). "[T]he essential elements of due process are notice and opportunity to be heard . . . before a tribunal having

6

jurisdiction over the matter." *Smires v. O'Shell*, 126 A.3d 383, 391 (Pa. Cmwlth. 2015) (quoting *Dep't of Transp., Bureau of Driver Licensing v. Clayton*, 684 A.2d 1060, 1064 (Pa. 1996)).

Under the third prong, we determine "whether a right is 'adequately vindicable' or 'effectively reviewable.'" *Geniviva*, 725 A.2d at 1213 (citation omitted). This question "cannot be answered without a judgment about the value interests that would be lost through rigorous application of a final judgment requirement." *Id.* "For instance, the substantial cost a party would incur in defending a claim may equate to an irreparable loss of a right to avoid the burden entirely." *Com. ex rel. Kane*, 128 A.3d at 345 (citation omitted).

The Department's Order meets the first prong of Rule 313(b)'s definition of a collateral order because the Department's Order denied only Private School's challenge to the Department's authority to regulate the Program. This is "entirely distinct from the underlying issues in the case," which are whether the Department can establish Private School violated the Department's regulations.[2] *See Shearer* 177 A.3d at 858.

Regarding the second prong of Rule 313(b)'s definition of a collateral order, the Department argues "the issue presented is a straightforward case involving application of a statutory scheme applicable just to [Private School]." Respondent's Br. at 10. This appeal, however, concerns whether the Department has jurisdiction to regulate a private school's provision of before and after school care for its students, which could have widespread implications for similarly-situated private schools throughout the Commonwealth. This is particularly true where, as here, the

---

[2] Although the Department now asserts these issues are not separable from Private School's appeal, the Department's counsel understood and agreed at the hearing before ALJ Herzing that these issues are separable. *See* R.R. at 24-26.

7

parties do not yet have the benefit of this Court's decision resolving the issue of whether the Department has the authority to regulate the Program. For this reason, we have acknowledged that jurisdictional issues "are deeply rooted in public policy . . . and they merit immediate review." *Bethke v. City of Phila.*, 282 A.3d 884, 889 (Pa. Cmwlth. 2022). Accordingly, we conclude the Department's Order meets the second prong of Rule 313(b)'s definition of a collateral order.

Finally, regarding the third prong, the Department asserts Private School conceded at argument that it will have an opportunity to present this issue after its substantive appeal proceeds through the BHA. While this may be true, if we were to determine the Department's Order is not immediately appealable, Private School would be required to proceed through the BHA's appeal process, which would include an evidentiary hearing on the merits, and to cooperate with the Department's inspections pending our ultimate review of the jurisdictional issue. In doing so, Private School would "exhaust substantial resources, and its right to avoid the enhanced burden will be lost." *Com. ex rel. Kane*, 128 A.3d at 347-48. Thus, should Private School "ultimately prevail on this issue in a later appeal, the victory will be hollow" because it will have already had to litigate the underlying issues through the BHA's appeal process and permit the Department access to its facility. *Id.* at 348. With these concerns in mind, this Court has determined that claims that go to the "jurisdiction of the proceedings below . . . will be irretrievably lost if [a party] must continue litigating to a final judgment in the [lower tribunal]." *Bethke*, 282 A.3d at 889. Thus, we conclude the Department's Order satisfies the third prong of Rule 313(b)'s definition of a collateral order.

Having concluded the Department's order satisfies each prong of Rule 313(b)'s definition of a collateral order, Private School may pursue this appeal as of

right. Consequently, we deny the Department's Motion to Quash, and we will proceed to evaluate the merits of Private School's appeal.

## B. The Department's Authority to Regulate the Program

The Department believes it has authority to regulate the Program as a "child care center" and a "children's institution" under the Code and the Department's regulations. Private School argues that the Program is not a "child care center" or a "children's institution" under the Code. Instead, Private School argues it is only subject to the supervision of the Department of Education as a "school which is operated by a bona fide church or other religious body" under Section 1327(b) of the Public School Code of 1949[3] (School Code), 24 P.S. § 13-1327(b).

A large portion of Private School's arguments were rejected by our Supreme Court in *St. Elizabeth's Child Care Center*, which involved a Roman Catholic Church (the Church) operating a nonprofit child day care center. *Id.* at 1274-75. Noting that the Church did not have a certificate of compliance, the Department of Public Welfare (DPW), which changed its name to the Department in 2014,[4] ordered the Church to cease and desist operating its day care. *Id.* at 1275. The Church, referencing Article X of the Code's restriction of DPW's licensing powers to for-profit "child care centers," argued DPW lacked authority to promulgate regulations requiring certification of nonprofit child day care centers. *Id.* The Supreme Court, however, noted that Article IX of the Code "confers broad regulatory power on DPW, providing it with supervisory authority over 'all children's institutions within this Commonwealth.'" *Id.* at 1276. The Court further concluded that "as a private child day care provider, [the Church] qualifies as a children's institution subject to DPW's supervisory power." *Id.* Accordingly, the

---

[3]   Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702.
[4]   *See* Act of September 24, 2014, P.L. 2458.

9

Supreme Court determined the Department's regulations were valid, and that they could be applied equally to nonprofit and for profit child care centers. *Id.*

To the extent Private School asserts the Department cannot regulate it because it is a nonprofit institution, *St. Elizabeth's* clearly refutes those arguments. The remainder of Private School's arguments attempt to distinguish *St. Elizabeth's* on the basis that the Program is part of "a day school which is operated by a bona fide church or other religious body" under Section 1327(b)(2) of the School Code. Section 1327(b)(2) states:

> It is the policy of the Commonwealth to preserve the primary right and the obligation of the parent or parents, or person or persons in loco parentis to a child, to choose the education and training for [a child enrolled in a day school which is operated by a bona fide church or religious body]. Nothing contained in **this act** shall empower the Commonwealth, any of its officers, agencies or subdivisions to approve **the course content, faculty, staff or disciplinary requirements** of any religious school referred to in this section without the consent of said school.

24 P.S. § 13-1327(b)(2) (emphasis). Private School argues Section 1327(b)(2) shows the General Assembly's "hands off approach to religious schools" and "recognizes the need to separate governmental interference from these schools." *See* Petitioner's Br. at 21, 23. Private School also argues the Program is part of its operations, and, therefore, should only be subject to the Department of Education's limited oversight. *Id.* at 23.

Private School's arguments present us with questions of statutory interpretation, which are pure questions of law and are "subject to a *de novo* standard of review" and a plenary scope of review. *St. Elizabeth's*, 963 A.2dat 1276 (citations omitted). When our scope of review is plenary, we may review the entire record. When our standard of review is *de novo*, we may fully reconsider the issue. *Passel*

10

*v. Dep't of Transp., Bureau of Driver Licensing*, 928 A.2d 381, 383 (Pa. Cmwlth. 2007). When interpreting a statute, we "apply the Statutory Construction Act,[5] which directs us to ascertain and effectuate the intent of the General Assembly." *Johnson v. Phelan Hallinan & Schmieg, LLP*, 235 A.3d 1092, 1097 (Pa. 2020) (citing 1 Pa.C.S. § 1921(a)). "Generally, a statute's plain language provides the best indication of legislative intent." *Id.* (citation omitted). Where the language in a statute is clear, words and phrases contained in the statute must be construed in accordance with their common and accepted usage. 1 Pa. C.S. § 1903(a). "Only when the words of a statute are ambiguous will we resort to other considerations to discern legislative intent." *Johnson*, 235 A.3d at 1097 (citing 1 Pa.C.S. § 1921(c)). We are also mindful that "'[t]he interpretation of a statute by those charged with its execution is entitled to great deference, and will not be overturned unless such construction is clearly erroneous.'" *St. Elizabeth's*, 963 A.2d at 1277 (citation omitted).

Section 1327(b)(2)'s restrictions are limited to "this act," which clearly refers to the School Code, not all laws enacted by the General Assembly. *See* 24 P.S. § 13-1327(b)(2). In addition, Section 1327(b)(2) only limits governmental interference with "any religious school['s]" "course content, faculty, staff or disciplinary requirements." *Id.* These restrictions relate to a school's educational programming. Accordingly, we reject Private School's arguments that Section 1327(b)(2) of the School Code completely prohibits the Department from regulating any activities conducted at a religious school's facilities.

Private School also argues the Department's regulations do not apply to the Program. Specifically, Private School believes it is exempt from Section 3270.3 of

---

5 Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501 – 1991.

11

the Department's regulations, which extends the Department's regulatory authority to "care provided before or after the hours of instruction in **nonpublic schools** and in private nursery schools and kindergartens." *See* 55 Pa. Code § 3270.3 (emphasis added); Petitioner's Br. at 33. Private School asserts that "nonpublic school" is used in the School Code separately and distinctly from a "day school which is operated by a bona fide church or other religious body." *See* 24 P.S. § 13-1327. Because Private School is regulated by the Department of Education as a school operated by a bona fide church, Private School asserts it is not a "nonpublic school."

Initially, we note that the School Code does not control our interpretation of the Department's regulations. Because "nonpublic school" is not defined in the Department's regulations, we may construe it in accordance with its common and accepted usage. *See Quest Diagnostics Venture, LLC v. Com.*, 119 A.3d 406, 412 (Pa. Cmwlth. 2015) ("The statutory construction rules equally apply to the interpretation of an agency's regulations.") (citation omitted); 1 Pa. C.S. § 1903(a). Private School is not a public school. Therefore, Private School would qualify as a "nonpublic school" under that term's common usage. The Department's regulations' use of "public school" supports this interpretation. Specifically, the Department's regulations categorize a school as either public or private, without differentiating categories of private schools. *See, e.g.*, 55 Pa. Code § 3270.4 ("a public or private school system"); 55 Pa. Code § 3270.241 ("If a child is required to be enrolled in a public or private school under the Public School Code of 1949 . . .").

Even if we looked to the School Code for guidance in defining "nonpublic school" in the Department's regulations, as Private School urges us to do, the School Code does not support Private School's argument. In most respects, the School

12

Code's use of "nonpublic school" applies to all schools that are not public schools.[6] The School Code only treats "day school[s] which [are] operated by a bona fide church or other religious body" differently than other nonpublic schools in limited circumstances that serve a particular purpose.[7] Accordingly, we reject Private School's arguments and conclude Private School qualifies as a "nonpublic school" under Section 3270.3 of the Department's regulations. *See* 55 Pa. Code § 3270.3.

For the reasons set forth above, we reject Private School's arguments that the law provides with certainty the Department cannot regulate the Program. At this stage of these proceedings, we are not being asked to determine whether the Program provides child care and is, therefore, subject to the Department's regulations. Instead, the Department will bear the burden of proof before the BHA to establish

---

[6]  *See, e.g.*, Sections 1504-J and 1507-J of the School Code, added by the Act of June 28, 2019, P.L. 146, 24 P.S. §§ 15-1504-J, 15-1507-J ("public schools or nonpublic schools"); Sections 923.1-A and 923.2-A of the School Code, added by the Act of September 26, 1978, P.L. 771, 24 P.S. §§ 9-923.1-A, 9-923.2-A ("'Nonpublic school' means any nonprofit school, other than a public school within the Commonwealth of Pennsylvania, wherein a resident of the Commonwealth may legally fulfull the compulsory school attendance requirements . . . ."); Section 923-A of the School Code, added by the Act of July 12, 1972, P.L. 863, 24 P.S. § 9-923-A ("'Nonpublic school' means any school, other than a public school within the Commonwealth of Pennsylvania, wherein a resident of the Commonwealth may legally fulfill the compulsory school attendance requirements of this act . . . .") ("Approximately one quarter of all children in the Commonwealth, in compliance with the compulsory attendance provisions of this act, attend nonpublic schools"); Section 1213 of the School Code, 24 P.S. § 12-1213 ("public or nonpublic schools").

[7]  *See* Section 1613(b) of the School Code, 24 P.S. § 16-1613(b) (providing minimum courses for high school graduation in schools operated by a bona fide church or other religious body); Section 1327(b) of the School Code, 24 P.S. § 13-1327(b) (establishing minimum curriculum requirements for schools operated by a bona fide church or other religious body, and exempting those schools from the Department of Education's curriculum requirements which apply to public schools and other nonpublic schools).

Private School's operation of the Program constitutes child care in violation of the Code.[8]

## C. Private School's Constitutional Arguments

Private School raised several arguments on appeal related to its religious freedom under the United States and Pennsylvania Constitutions. The Department responds by asserting Private School waived those arguments by not raising them before the Department. While a party must typically raise an issue before a governmental unit to preserve the issue for our review, a party can raise questions involving the validity of a statute for the first time on appeal. *See* Section 703 of the Administrative Agency Law,[9] 2 Pa.C.S. § 703(a). To raise questions involving the validity of a statute for our review, a party does not have to include the issue in its petition for review, but must include the issue in its statement of questions involved in its brief. *See* Pa.R.A.P. 1513(d), 2116. In addition, the Pennsylvania Supreme Court has explained that only facial constitutional challenges, not as applied constitutional challenges,[10] question the validity of a statute. *See Lehman v. Pa. State Police*, 839 A.2d 265, 275-76 (Pa. 2003).

---

[8] While a school's mandatory educational programming is only subject to the Department of Education's regulations, a non-mandatory program could be subject to the Department of Education's regulations, the Department of Human Services' regulations, or both. This Court's recent decision in *State College Area School District v. Department of Human Services* (Pa. Cmwlth., No. 337 C.D. 2022, filed October 2, 2023), explained this distinction, as well as several other factors for determining whether a school program qualifies as child care under the Code.

[9] 2 Pa.C.S. §§ 501-508, 701-704.

[10] There are two types of constitutional challenges: facial challenges and as applied challenges. *Nigro v. City of Phila.*, 174 A.3d 693, 699 (Pa. Cmwlth. 2017) (citation omitted). A facial challenge "tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Peake v. Com.*, 132 A.3d 506, 517 (Pa. Cmwlth. 2015) (citation omitted). "A statute is facially unconstitutional only where there are no circumstances under which the statute would be valid." *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1041 (Pa. 2019). "[A]n as-applied [challenge] . . . does not contend that a law is
**(Footnote continued on next page…)**

14

The record confirms the first time Private School raised its constitutional challenges in this matter was in the statement of questions involved in its brief before this Court. Therefore, Private School waived review of any as applied constitutional challenges[11] by failing to raise them before the Department. *See Lehman*, 839 A.2d at 276. Private School preserved its facial constitutional challenges, however, by raising them in the statement of questions involved in its brief. *See id.*; Pa.R.A.P. 1513(d), 2116.

Private School's facial challenges assert the Department's regulations violate the establishment and free exercise clauses of the First Amendment to the United States Constitution[12] and the freedom of conscience and religious practices clause of article I, section 3 of the Pennsylvania Constitution.[13] Private School asserts the Department's regulations would require religious schools to complete an orientation before operating a child care center and to complete ongoing professional development training. *See* Petitioner's Br. at 38. Private School also asserts the Department's regulations require compliance with federal and state civil rights laws from which religious schools are exempt. *Id.* at 38-39. Accordingly, Private School believes the Department's regulations impermissibly infringe upon a religious

---

unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Weissenberger v. Chester Cnty. Bd. of Assessment Appeals*, 62 A.3d 501, 505 (Pa. Cmwlth. 2013) (citation omitted). "[A]n as-applied challenge will not necessarily invalidate a law given that a law 'may operate in an unconstitutional way as to one particular individual or company, as to which it may be declared void, and yet may, as to others still be effective.'" *Nigro*, 174 A.3d at 700 (quoting *Pennsylvania R. Co. v. Driscoll*, 9 A.2d 621, 632 (Pa. 1939)).

[11] Private School's arguments begin by sounding as facial challenges, yet appear to develop into as applied challenges.

[12] U.S. Const. amend. I.

[13] Pa. Const. art. I, § 3.

school's ability to hire staff "based upon their religious beliefs and their ability to transmit those beliefs to the individuals they instruct." *Id.* at 39.

On remand from the Pennsylvania Supreme Court in *St. Elizabeth's*, this Court considered similar constitutional arguments and evaluated what level of scrutiny to apply to the contested regulations. *See St. Elizabeth's Child Care Center v. Dep't of Pub. Welfare*, 989 A.2d 52, 55-56 (Pa. Cmwlth. 2010) (*St. Elizabeth's II*). Ultimately, this Court did not determine whether to apply rational basis scrutiny or a heightened level of scrutiny because we recognized that the Church needed to "establish that the application of [the Department's] regulations substantially burdens" its constitutional rights as a threshold matter. *Id.* at 55. In *St. Elizabeth's II*, we rejected arguments that the Department's regulations infringed upon the Church's hiring ability, as follows:

> St. Elizabeth's asserts that the regulations in Chapter 20 place restrictions on the center's hiring decisions. For example, St. Elizabeth's complains that "Appendix A – Civil Rights Compliance-Statement of Policy," . . . requires child care facilities to implement civil rights policies and procedures in accordance with applicable civil rights laws, thereby requiring that St. Elizabeth's employment action be taken without regard to religious creed. St. Elizabeth's notes that federal and state civil rights laws include exemptions for religious facilities but that DPW's regulations do not. However, we accept DPW's construction of this provision as a statement of policy that merely requires compliance with existing statutes and regulations and does not impose additional requirements. We also note that each of the civil rights laws that otherwise affect religious organizations . . . contain an exception for religion that would preclude the kind of interference or control that St. Elizabeth's fears will result.

*St. Elizabeth's II*, 989 A.2d at 56. The Department's regulations continue to require only "compliance" with existing civil rights statutes and regulation, from which religious schools are exempt. Therefore, we reject Private School's contention that

reference in the regulations to various civil rights laws infringes upon a religious school's employment decisions.

With regard to Private School's other asserted concerns, similar to the Church in *St. Elizabeth's II*, Private School "has not explained how the regulations at issue interfere with the facility's ability to communicate Church teachings," and has "failed to identify any actual or imminent infringement upon [its] right." *Id.* at 56, 57. Accordingly, Private School's "constitutional claims necessarily fail." *Id.* at 57.

### III.    Conclusion

For the reasons set forth above, we deny the Department's Motion to Quash Private School's petition for review and affirm the Department's Order.

_____
STACY WALLACE, Judge

Judge McCullough did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

South Hills Catholic Academy,       :
           Petitioner    :
                                     :
      v.                       : No. 563 C.D. 2023
                                       :
Department of Human Services,      :
           Respondent   :

# **O R D E R**

**AND NOW**, this 11th day of January 2024, the Department of Human Services' (the Department) Motion to Quash South Hills Catholic Academy's petition for review is **DENIED** and the Department's May 18, 2023 order is **AFFIRMED**.

 

_____

STACY WALLACE, Judge